EL PUEBLO DE PUERTO RICO, recurrido, *v.* JAVIER DÁVILA DEL-
GADO, acusado y peticionario.

Número: CE-93-522 Resuelto: 20 de mayo de 1997

*Héctor R. Crespo Millán*, abogado de la parte peticionaria; *Carlos Lugo Fiol, Subprocurador General*, y *Rose Mary Corchado Lorent, Procuradora General Auxiliar*, abogados de El Pueblo; *Lourdes I. Cabán Dávila* y *Luis E. Cabán Dávila*, abogados del policía Luis Cabán Muñiz, parte interventora.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El presente recurso nos permite expresarnos, por vez primera, sobre el derecho que en la Ley Núm. 22 de 22 de abril de 1988, conocida como la Ley de Protección a las Víctimas y Testigos,([1]) se concede a las víctimas o testigos de un delito "a ser consultado[s] antes de que se proceda a

---

([1]) 25 L.P.R.A. secs. 973–973c.

transigir [por el Ministerio Público] una denuncia o acusación contra el autor del delito".

Nos expresamos, además, sobre el alcance de la referida "consulta"; sobre el efecto que tiene la misma respecto a la determinación del Ministerio Fiscal de transigir una denuncia o acusación o de poner fin a los procedimientos criminales, pendientes contra un acusado, mediante una alegación preacordada, y respecto al curso a seguir por el foro judicial ante una solicitud del Fiscal a esos fines.

## I

Aproximadamente a las 11:00 de la noche del 18 de noviembre de 1992, el "testigo o víctima" Luis E. Cabán Muñiz —policía estatal que estaba libre de servicio— se encontraba departiendo con un grupo de amigos en una de las calles del Viejo San Juan. Conforme lo aseverado por él, en la declaración jurada que posteriormente prestara ante la Fiscalía de Distrito de San Juan, por su lado pasó un vehículo de motor en el que viajaban cuatro (4) individuos, uno de los cuales alegadamente le apuntó con una "metralleta" color negro.

Dicho vehículo de motor se detuvo más adelante, próximo a un grupo de agentes uniformados del orden público. Cabán Muñiz se acercó al referido vehículo, procediendo a identificarse como policía, apuntándoles con su revólver de reglamento, y explicando a los demás agentes que allí se encontraban lo que había sucedido. Luego de ordenar a los cuatro (4) individuos que se desmontaran del vehículo, Cabán Muñiz pudo observar la metralleta en el interior del vehículo, procediendo a ocupar la misma.(²)

---

(²) En palabras del policía Cabán Muñiz:

"... Donde ellos se detienen hay un grupo de policías en la esquina a los cuales, yo me les identifico como agente del [o]rden [p]úblico y les digo que esos cuatro individuos me acaban de apuntar con una metralleta, al mismo tiempo indicándoles a éstos y apuntándoles con mi arma de reglamento, que se bajen del vehículo lo cual ellos hacen. Desde fuera de este vehículo, puedo observar entre medio de las dos

Uno (1) de los cuatro (4) individuos resultó ser menor de edad, refiriéndose el mismo al Tribunal de Menores. Contra los restantes tres (3), esto es, Javier Dávila Delgado, Jaime Silva Orta y José Lebrón Rodríguez, el Estado radicó las correspondientes denuncias.([3]) Luego de la celebración de la vista preliminar, se radicaron contra éstos los pliegos acusatorios correspondientes ante el antiguo Tribunal Superior de Puerto Rico, Sala de San Juan, por varias infracciones a la Ley de Armas de Puerto Rico.([4])

La vista en su fondo fue señalada para el 11 de febrero de 1993, juicio a ser presidido por la entonces Juez del Tribunal Superior de Puerto Rico, hoy Juez del Tribunal de Circuito de Apelaciones, Hon. Ygrí Rivera de Martínez. El Fiscal a cargo del caso —Hon. Luis A. Meléndez Berríos— informó al tribunal de instancia que, luego de haber hecho un análisis de su caso y de sostener un cambio de impresiones con sus testigos, había llegado a una "alegación preacordada" con la representación legal de los imputados. Como consecuencia de la misma, el fiscal acordó archivar todas las acusaciones radicadas contra Javier Dávila Delgado y aceptar que Jaime Silva Orta y José Lebrón Rodríguez se declararan culpables de una violación, en su modalidad grave, de los Arts. 6, 7 y 32 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416, 417 y 442; recomendó,

---

butacas delanteras la metralleta con la cual me apuntaron." Apéndice I, pág. 2.

El arma incautada resultó ser una metralleta color negro, marca Intratec, número de serie mutilada, cargada con un peine con dieciocho (18) balas.

([3]) Contra los tres (3) mencionados individuos, originalmente se determinó causa probable *para arresto* por infracción a los Arts. 5 y 8A de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 415 y 418a, posesión y portación ilegal de ametralladora); Art. 11 de la referida ley, 25 L.P.R.A. sec. 421 posesión de arma de fuego con serie mutilada, y el Art. 32 (25 L.P.R.A. sec. 442), apuntarle a un ser humano con un arma de fuego.

([4]) José Lebrón Rodríguez renunció a la vista preliminar que establece la Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, razón por la cual se determinó causa probable *para acusar* contra éste por *todos* los delitos originalmente imputados.

En cuanto a Javier Dávila Delgado y Jaime Silva Orta, luego de celebrada la referida vista preliminar, el tribunal determinó causa probable *para acusar* en relación con los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418; esto es, por posesión y portación ilegal de un arma de fuego cargada.

además, al tribunal la imposición a éstos de una pena de un (1) año en reclusión o de dos (2) años bajo el régimen de libertad a prueba.

El tribunal de instancia, luego de examinar a los imputados de delito, aceptó la alegación preacordada a que habían llegado las partes y, *en lo pertinente al recurso ante nuestra consideración*, procedió a ordenar el archivo y sobreseimiento de todas las acusaciones radicadas contra Javier Dávila Delgado. El 17 de febrero de 1993, el policía Cabán Muñiz radicó, por derecho propio, ante el foro de instancia un escrito en el cual alegó, en lo pertinente, que

> ... el fiscal Meléndez Berríos había accedido a una alegación de culpabilidad preacordada respecto a dos de los acusados y había solicitado el archivo de todas las acusaciones contra el otro *sin haberle consultado antes a él, que él era la víctima* y "fue quien arriesgó su vida en esta intervención". Añadió *que* "[e]*l fiscal solamente* [*me*] *informó lo que iba a hacer,* y cuando le objeté él hizo caso omiso a nuestra objeción e indicó que los otros dos acusados se iban a declarar culpables, que él prefería eso a nada y que *'eso es así y punto'*." El señor Cabán Muñiz también adujo que el fiscal, además, le indicó que *"[e]stoy cansado, son las once ya"*, mientras miraba el reloj (siendo, en efecto, las 11:00 de la mañana). (Énfasis suplido.) Apéndice I, págs. 4–5.

En atención a lo antes expresado, el Policía Cabán Muñiz solicitó del tribunal de instancia que reconsiderara su resolución accediendo a la alegación preacordada, por ser la misma "nula desde su inicio ya que fue hecha contrario a una ley, [a la] moral y al orden público". El tribunal de instancia celebró una vista oral el 1ro de marzo de 1993 y, a base de lo allí argumentado, denegó la solicitud del agente Cabán Muñiz.(5) En la resolución emitida de 30 de marzo de 1993, dicho tribunal concluyó que la "consulta" efectuada por el Fiscal al agente Cabán Muñiz había sido hecha "conforme a derecho".

---

(5) En dicha vista oral, el policía Cabán Muñiz estuvo representado por el Lcdo. Luis E. Cabán Dávila.

Inconforme, Cabán Muñiz —representado por abogado— acudió ante el antiguo Tribunal de Apelaciones de Puerto Rico, vía *certiorari*, en revisión de dicha resolución denegatoria. El foro apelativo, reteniendo jurisdicción sobre el caso y a los fines de estar en condiciones de resolver el mismo, paralizó los procedimientos y le ordenó al tribunal de instancia que celebrara una vista evidenciaria —en la que debería escuchar, en específico, tanto al policía Cabán Muñiz como al Fiscal Meléndez Berríos— y procediera a hacer determinaciones específicas sobre si el referido Fiscal había, o no, previamente "consultado" al policía Cabán Muñiz respecto a la alegación preacordada realizada.(6)

La Honorable Juez Rivera de Martínez celebró la vista ordenada por el foro apelativo, realizó las determinaciones de hechos requeridas, y se *reafirmó* en su determinación previa a los efectos de que la "consulta", requerida por la citada Ley de Protección a las Víctimas y Testigos, en efecto había sido realizada y que la misma se ajustaba a derecho. Por su importancia, reproducimos en su totalidad las determinaciones de hechos realizadas por la Juez Rivera de Martínez:

(1) El día 11 de febrero del año en curso se llevó a efecto una alegación preacordada entre el fiscal Meléndez Berríos y los acusados en el presente caso, representados por sus respectivos abogados.

(2) Dicha alegación consistió en el archivo de los casos del acusado Javier Dávila Delgado y del artículo 11 de la Ley de Armas [de Puerto Rico] contra los imputados Jaime Silva Orta y José A. Lebrón Rodríguez. Jaime Silva Orta hizo alegación de culpabilidad por el artículo 7 de la Ley de Armas [de Puerto Rico] (se le rebajó de 8 a 7) en su modalidad grave. También hizo alegación de culpabilidad por el artículo 6 y 32 de la Ley de Armas [de Puerto Rico]. (El artículo 6 era de naturaleza grave y

---

(6) Entretanto, los coacusados Silva Ortiz y Lebrón Rodríguez solicitaron del foro apelativo que los relevara de la orden de paralización emitida por dicho foro, solicitud a la que se allanó el policía Cabán Muñiz.

Dicha solicitud de relevo fue declarada con lugar por el foro apelativo, siendo sentenciado Silva Ortiz y Lebrón Rodríguez por el tribunal de instancia *conforme la alegación preacordada realizada.*

le fue rebajado a menos grave). En cuanto a José Lebrón Rodríguez se reclasificó el artículo 5 de la Ley de Armas [de Puerto Rico] a artículo 6 en su modalidad menos grave y el artículo 8-A de la misma ley se rebajó a artículo 7 en su modalidad grave. En el artículo 32 de la Ley de Armas hizo alegación de culpabilidad según el delito imputado. Se recomendó para ambos una pena de un año si fuera para cumplir y dos años de cualificar para los beneficios de una sentencia suspendida.

(3) La alegación preacordada se discutió inicialmente durante una conversación que sostuvieron los abogados defensores de los tres coacusados y el fiscal Luis Meléndez Berríos.

(4) *El fiscal Meléndez orientó al testigo y víctima en el caso, el policía Luis E. Cabán Muñiz, en cuanto al alcance de la alegación discutida por él con los abogados previamente, y el testigo formuló interrogantes a la misma en lo referente al acusado Javier Dávila Delgado.*

(5) Tales interrogantes *tuvieron el efecto de una objeción por el policía Cabán al advertirle al fiscal que ese acusado era el que alegadamente le había apuntado con el arma.*

(6) El fiscal Meléndez *le ofreció una explicación consistente en que en su declaración jurada el testigo-víctima no identificó a la persona que alegadamente le apuntó con el arma, lo cual podía afectar en forma negativa su testimonio en el juicio.*

(7) Al concluir la conversación entre el fiscal y el policía Cabán *éste no insistió en su objeción,* silencio que el fiscal percibió erróneamente como de conformidad y aceptación de la alegación preacordada.

(8) El fiscal *fortaleció su conclusión* ante el hecho de que el testigo-víctima, aún estando en el salón de sesiones hasta que terminaron los trabajos *no le expresó molestia u objeción de clase alguna nuevamente.*

(9) La alegación preacordada se llevó al récord en forma diferente a la que el testigo-víctima plasmó en su declaración jurada con referencia a los otros dos coacusados, *y aún así el referido testigo no protestó cuando la escuchó.* Tampoco lo hizo ante ningún otro funcionario ese día. (Énfasis suplido.) Apéndice XIII, págs. 123–124.

Atendidas las determinaciones de hechos realizadas por la Honorable Juez Rivera de Martínez, el mencionado foro apelativo dictó sentencia.[7] Mediante la misma *revocó* las sentencias de archivo y sobreseimiento que el tribunal de

---

[7] Panel compuesto por los Honorables Jueces Hiram Sánchez Martínez, Jeannette Ramos Buonono y Jorge Segarra Olivero.

instancia había emitido en cuanto al coacusado Javier Delgado Dávila; devolviendo el caso al tribunal de instancia para "la continuación de los procedimientos"; esto es, para la celebración del correspondiente juicio al coacusado Dávila Delgado. En la mencionada sentencia, el referido foro apelativo concluyó, en síntesis, que

> ... la solicitud de archivo y sobreseimiento de todos los cargos [respecto al coacusado Javier Dávila Delgado] *era improcedente en derecho* pues *no* promovía ningún interés público y era *contraria* a éste. La aprobación de la solicitud de archivo por el tribunal sentenciador *constituyó un ejercicio extralimitado de discreción* porque la Regla 247(a) requiere siempre que se compruebe razonablemente que el archivo y sobreseimiento de *todos* los cargos no es contrario al interés público. (Énfasis suplido.) Apéndice I, págs. 39–40.

Inconforme, Javier Dávila Delgado acudió ante este Tribunal —vía *certiorari*— en revisión de la referida sentencia, imputándole al mencionado foro apelativo haber errado

> ... al concluir que el Tribunal Superior abus[ó] de su discreción al aceptar la alegación preacordada de este caso, y por consiguiente, al acceder a la solicitud del Ministerio Público de archivar y sobreseer las acusaciones contra el recurrente, Javier Dávila Delgado.([8]) Petición de *certiorari*, pág. 7.

---

([8]) El peticionario Dávila Delgado le imputó, además, al referido foro apelativo haber errado

"... al concluir que el agente de la Policía de Puerto Rico que arrestó al recurrente tiene capacidad jurídica [sic] para impugnar la alegación preacordada de este caso, y por consiguiente, para solicitar la revisión de las sentencias dictadas por el Tribunal en virtud de una alegación preacordada." Petición de *certiorari*, pág. 7.

La citada Ley de Protección a las Víctimas y Testigos establece, en lo pertinente, en su Art. 3 (25 L.P.R.A. sec. 973b), que:

*"Toda persona que ostente un derecho de los reconocidos por [esta Ley] podrá por sí, por su tutor o por medio de un funcionario público o persona particular interesada en su bienestar acudir al Departamento de Justicia o cualquier otro foro administrativo o Sala del Tribunal de Primera Instancia del distrito judicial donde resida para reclamar cualquier derecho o beneficio que le corresponda o para solicitar que se suspenda una actuación en violación a las disposiciones [de dicha Ley]."* (Énfasis suplido.)

No discutimos, en consecuencia, el mencionado señalamiento de error.

Expedimos el auto de *certiorari* solicitado. Estando en condiciones de resolver el recurso, procedemos a así hacerlo. Procede revocar; veamos por qué.

## II

No debe haber duda sobre el hecho de que en el procesamiento de personas acusadas de la supuesta comisión de un delito público, las "víctimas o testigos" de los alegados hechos delictivos juegan un papel extraordinariamente importante; al extremo de que, sin el testimonio y cooperación de éstos, el Estado *no* podría procesar criminalmente a persona alguna. El reconocimiento de esta situación desembocó en la adopción por el Gobierno federal y por la gran mayoría de las jurisdicciones estatales norteamericanas de leyes en protección de los derechos de las víctimas o testigos; ciudadanos que, de manera involuntaria, se ven involucrados en el esclarecimiento de hechos delictivos y que, muchas veces, ponen en riesgo su seguridad física al actuar como testigos.

La adopción de esta clase de legislación en Puerto Rico no se hizo esperar. En 1988, la Asamblea Legislativa aprobó, mediante la Ley Núm. 22 de 22 de abril del mencionado año, ante, la "Carta de Derechos de las Víctimas y Testigos de Delito". En lo pertinente al recurso ante nuestra consideración, el inciso (g) del Art. 2 de la citada ley establece, en lo pertinente que:

> Toda persona que sea víctima o testigo de delito en el Estado Libre Asociado de Puerto Rico tendrá derecho a:
>
> . . . . . . . .
>
> g) Ser notificado del desarrollo de la investigación, procedimiento y sentencias del responsable del delito, y *a ser consultado* antes de que se proceda a transigir una denuncia o acusación contra el autor del delito y a ser informado de los procedimientos posteriores a la sentencia cuando la víctima o el testigo así lo solicite a la Policía de Puerto Rico, al Negociado de

Investigaciones Especiales y al Ministerio Fiscal. (Énfasis suplido.) 25 L.P.R.A. sec. 973a(g).

*¿Qué significa, y qué alcance tiene, la frase "ser consultado"?* Desafortunadamente, *no* hubo debate en la Asamblea Legislativa al aprobarse la referida ley. Únicamente contamos, según ello se desprende del informe rendido por la Comisión de lo Jurídico Penal de la Cámara de Representantes de Puerto Rico, con información a los efectos de que dicho proyecto de ley recoge los derechos y las garantías mínimas reconocidas a las víctimas y testigos en la jurisdicción federal y en las distintas jurisdicciones estatales norteamericanas que previamente aprobaron legislación similar.

En el historial legislativo del equivalente federal a nuestra legislación, el *Victim and Witness Protection Act of 1982*,(⁹) se hizo alusión al carácter que ha de tener la consulta hecha a una víctima y/o a un testigo antes de negociar algún acuerdo. Discutiendo los parámetros esbozados en los *Federal Guidelines for Fair Treatment of Crime Victims and Witnesses in the Criminal Justice System* acertadamente se señaló, en lo pertinente, lo siguiente:

> ... [I]n serious cases, victims (or in the case of minors or homicide victims the victims' family) should be able to *have their views heard by the prosecutor* prior to certain key criminal justice decisions or recommendations in the case. The *non-binding consultation* should precede recommendations on pretrial release, pretrial diversion, dismissal, and plea negotiations. American Bar Association Criminal Justice Standard 14-3.1 addresses the last of these, stating that *"the prosecuting attorney should make every effort to remain advised of the attitudes and sentiments of victims ... before reaching a plea agreement."* (Énfasis suplido.)

Por otro lado, *no* podemos enfatizar lo suficiente el hecho de que, no obstante los derechos que le concede esta clase de legislación a las víctimas o testigos de un

---

(⁹) Pub. L. No. 97-291 Sec. 6, 96 Stat. 1248, 1256.

delito, *éstas no son parte para efectos del proceso criminal*; careciendo éstas, en consecuencia, de los derechos que, de ordinario, tienen las partes en un procedimiento judicial.([10]) De forma tal que examinado en su *justa perspectiva*, el derecho que se concede en el antes transcrito Art. 2(g) de la Ley de Protección a las Víctimas y Testigos, a "ser consultado", *equivale a ser oído, a que su opinión o parecer sea tomado en consideración por el fiscal antes de que éste llegue a un acuerdo con el acusado y de cuestionar, ante el foro judicial, el que ello así no se haya hecho.*([11]) *Dicho de otra forma, de ninguna manera puede ser interpretado el derecho a ser consultado, que concede la citada ley, como que la víctima o testigo tiene el poder de vetar la actuación o el curso de acción que el Fiscal entienda procedente seguir en el caso.* Dicha determinación es de la *exclusiva inherencia* del Ministerio Público.

Realmente, *no* puede ser de otra manera. Ello en vista de que, como expresáramos en *Pueblo v. Quiñones,*

---

([10]) Al considerar el grado e impacto de la intervención de las víctimas y testigos en los procesos criminales al amparo de la Carta de Derechos de las Víctimas y Testigos, debemos advertir la importancia de los derechos del acusado, de rango constitucional, *vis-à-vis* los derechos de rango estatutario de la víctima. C.R. Goddu, *Victims' "Rights" or a Fair Trial Wronged?*, 41 Buff. L. Rev. 246, 266 (1993).

Además, nos indica el Prof. David Shapiro, que el conceder algunos derechos de intervención a una parte *no* implica necesariamente la concesión unitaria de todos los derechos:

"... When one is granted intervention, either as of right or in the exercise of discretion, it does not necessarily follow that he must be granted all the rights of a party ... including full rigths of discovery and cross examination, the ability to veto a settlement of the case, and the right to appeal from a final decision. It is both feasible and desirable to break down the concept of intervention into a number of litigation rights and to conclude that a given person has one or some rights but not all." (Escolios omitidos.) D. Shapiro, *Some Thoughts on Intervention Before Courts, Agencies and Arbitrators*, 81 Harv. L. Rev. 721, 727 (1968).

([11]) El *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. I, pág. 366, define el vocablo "consulta", en su acepción pertinente al inciso (g) del Art. 2 de la Ley de Protección a las Víctimas y Testigos, 25 L.P.R.A. sec. 973a(g), como: "Acción y efecto de consultar. 2. Parecer o dictamen que por escrito se pide o se da acerca de una cosa". De la misma fuente se nos ofrece como definición de la palabra "consultar": "Conferir, tratar o discurrir con una o varias personas sobre lo que se debe hacer en un negocio. 2. Pedir, parecer, dictamen o consejo. ... 4. Someter una duda, caso o asunto a la consideración de otra persona." Íd.

*Rivera*, 133 D.P.R. 332, 338 (1993), constituye doctrina reiterada por este Tribunal que:

Nuestro ordenamiento encomienda al Poder Ejecutivo el deber de implantar las leyes penales. *Pueblo v. González Malavé*, supra, pág. 583; *Pueblo v. Tribunal Superior*, 94 D.P.R. 59, 65 (1967). Son los fiscales adscritos al Departamento de Justicia quienes tienen la función de procesar a todos los delincuentes por los crímenes y delitos de que pueda conocer bajo la autoridad y en representación del Estado Libre Asociado de Puerto Rico. 3 L.P.R.A. sec. 95; *Pueblo v. Pérez Casillas*, 126 D.P.R. 702, 710 (1990); Resumil de Sanfilippo, *op. cit.*, pág. 85.

*Como parte de sus prerrogativas, el Fiscal tiene discreción para entrar en negociaciones con la defensa a los fines de llegar a alegaciones preacordadas de culpabilidad.* Regla 72 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. *También tienen discreción para presentar o no el pliego acusatorio, aun cuando haya habido una autorización judicial para ello.* Regla 24(b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II; Resumil de Sanfilippo, *op. cit.*, págs. 92–93. (Énfasis suplido.)[12]

---

[12] Al respecto, nos parecen extremadamente atinadas las expresiones del Tribunal Supremo del estado de North Carolina, en el caso de *State v. Spicer*, 261 S.E.2d 893, 895 (1980), a los efectos siguientes:

"District attorneys have *wide discretion* in performing the duties of their office. *This encompasses the discretion to decide who will or will not be prosecuted.* In making such decisions, district attorneys must *weigh many factors* such as 'the likelihood of successful prosecution, the social value of obtaining a conviction as against the time and expense to the State, and his own sense of justice in the particular case.' Comment, *The Right to Nondiscriminatory Enforcement of State Penal Laws*, 61 Columbia L.Rev. 1103, 1119 (1961). The proper exercise of his broad discretion in his consideration of factors which relate to the administration of criminal justice aid tremendously in achieving the goal of fair and effective administration of the criminal justice system." (Énfasis suplido.)

Examínese, además, el comentario de A. Grossman Applegate, en *Prosecutorial Discretion and Discrimination in the Decision to Charge*, 55 Temple L.Q. 35–37 (1982), a los efectos siguientes:

"It is *universally recognized* that prosecutors exercise tremendous amounts of discretion in deciding whether or not to initiate proceedings against a person for the commission of a crime. The courts have traditionally been extremely solicitous toward this prosecutorial discretion. The case law is replete with instances of judicial affirmation of prosecutorial discretion in the decision to charge, not to charge, and what to charge. A prosecutor may not be compelled to bring a prosecution, nor, for the most part, compelled to terminate one.

"The judiciary has always been reluctant to circumscribe prosecutorial discretion. *The reasons commonly cited in support of this deference include the doctrine of separation of powers; the impossibility of total enforcement of the laws; the need for leniency in particular cases; and the prosecutor's, as opposed to the judge's, expertise.*" (Escolios omitidos y énfasis suplido.)

Resulta ser de particular pertinencia al caso de autos las expresiones del Tribunal Supremo de Estados Unidos en *Wayte v. United States*, 470 U.S. 598, 607–608 (1985). Expresó en dicho caso ese Alto Foro federal que:

This broad discretion rests largely on the recognition *that the decision to prosecute is particularly ill-suited to judicial review.* Such factors as the strength of the case, the prosecution general deterrence value, the Government's enforcements priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. *Judicial supervision in this area, moreover, entails systemic costs of particular concern.* Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. *All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.* (Énfasis suplido.)

■ Reafirmamos en el día de hoy lo expresado en *Pueblo v. Quiñones, Rivera*, ante; *Pueblo v. Pérez Casillas*, 126 D.P.R. 702, 710 (1990); *Pueblo v. González Malavé*, 116 D.P.R. 578, 583 (1985), y *Pueblo v. Tribunal Superior*, 94 D.P.R. 59, 65 (1967), a los efectos de que en nuestra jurisdicción, y conforme a lo dispuesto por nuestro ordenamiento jurídico, la facultad y responsabilidad de investigar los hechos delictivos y la decisión de a qué persona acusar y procesar criminalmente, y por qué delito, recae en la persona del Secretario del Departamento de Justicia de Puerto Rico y de los fiscales bajo su supervisión; poseyendo los mencionados funcionarios amplia discreción en el descargo de esas funciones.

Esa amplia discreción, naturalmente, *no* puede ser —en palabras del Prof. Ernesto L. Chiesa— "desenfrenada o ilimitada".[13] En primer lugar, y como señala Chiesa, "la selectividad en el procesamiento *está sujeta a limitaciones*

---

[13] E.L. Chiesa, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1992, Vol. II, pág. 578.

*constitucionales*. En particular, la decisión de procesar *no* puede estar basada en clasificaciones impermisibles, como raza y religión". (Énfasis suplido.)[14]

■ Esto es, los tribunales de justicia pueden y deben examinar la decisión que, a esos efectos, tome el Ministerio Público a la luz del criterio del "abuso de discreción". *Ello en vista de que nadie posee discreción absoluta.* Como se señalara en *Pueblo v. Marrero Ramos, Rivera López*, 125 D.P.R. 90, 92 (1990), se "puede establecer, como principio invariable, que cualquier delegación de poder legislativo concediendo discreción absoluta, resultaría inconstitucional, pues ello equivaldría a una delegación *in toto* del poder legislativo, actuación contraria a los cánones constitucionales de una democracia". Citando a *Pueblo v. Sánchez González*, 90 D.P.R. 197, 200 (1964).

■ De hecho, y en cuanto a la situación específica de la alegación preacordada, la Regla 72 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, *específicamente* le concede al tribunal de instancia *discreción* para aprobar, o no, la alegación preacordada a la que hayan llegado el Ministerio Público y la representación legal del imputado de delito. Asimismo, el tribunal de instancia, aun cuando acepte, en principio, la alegación preacordada, *no* está obligado a seguir las recomendaciones que le hagan las partes sobre una sentencia específica a imponerse al imputado de delito. Esto es, el tribunal tiene *discreción* para imponer la sentencia que entienda procedente en derecho.[15]

---

[14] Íd.

[15] Hemos expresado, en *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 211 (1990), que:

"*Discreción*, naturalmente, significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. En el ámbito judicial, sin embargo, el mencionado concepto 'no significa poder para actuar en una forma u otra, *haciendo abstracción* del resto del Derecho ...'. (Énfasis suplido.) *Pueblo v. Sánchez González*, 90 D.P.R. 197, 200 (1964).

"No resulta fácil precisar cuándo un tribunal de justicia incurre en un abuso de discreción. *No tenemos duda, sin embargo, de que el adecuado ejercicio de la discreción judicial está inexorablemente e indefectiblemente atado al concepto de la*

 Al enfrentarse a una situación como la que presenta el caso de autos, ¿qué curso de acción deberán seguir los tribunales de instancia? Éstos tendrán la obligación de examinar al imputado de delito, ello con el propósito de verificar que la renuncia de éste a todos los derechos que le asisten es una voluntaria e informada; cerciorarse de que se han observado y cumplido con los requisitos exigidos por la Ley de Protección a las Víctimas y Testigos,[16] y, en términos generales, asegurarse de que las motivaciones, tras la alegación preacordada propuesta por las partes, son legítimas y procedentes en derecho.

## III

En el caso hoy ante nuestra consideración, tenemos que *necesariamente partir* de las determinaciones de hechos que hiciera la Hon. Juez Rivera de Martínez, *una experimentada y competente magistrado*, respecto a lo ocurrido, o la "consulta" habida, entre el Fiscal Meléndez Berríos y el testigo, "víctima" en el caso, el policía Cabán Muñiz, con anterioridad al momento en que el mencionado representante del Ministerio Público le informara al tribunal sobre la alegación preacordada.

El tribunal de instancia, recordemos, llevó a cabo una vista evidenciaria, a instancias del foro apelativo, con el propósito principal de determinar, a base del testimonio del Fiscal Meléndez Berríos y el policía Cabán Muñiz, si el referido Fiscal "consultó", o no, con dicho agente del orden público y, si en efecto hubo la misma, en qué consistió dicha consulta. Para llegar a las mencionadas determinaciones de hecho, *naturalmente*, la Hon. Juez Rivera de Martínez tuvo que adjudicar credibilidad.

---

*razonabilidad.* Como expresáramos en *Pueblo v. Sánchez González*, ante, pág. 200, '[d]iscreción es, pues una *forma de razonabilidad aplicada al discernimiento judicial* para llegar a una conclusión justiciera ...'." (Énfasis suplido y en el original.)

[16] En específico, el tribunal de instancia deberá cerciorarse de que la "consulta" que requiere la referida ley ha sido llevada a cabo.

■ Es norma claramente establecida por este Tribunal que en ausencia de error manifiesto, pasión, prejuicio o parcialidad, no intervendremos a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad hechas en instancia por el juzgador de los hechos. La razón de esta norma es obvia, pues, *es el juzgador de los hechos quien observa el comportamiento de los testigos al momento de testificar, lo cual constituye un aspecto de vital importancia al momento de adjudicar credibilidad.* Véanse: *Pueblo v. Pintos Lugo*, 131 D.P.R. 1015 (1992); *Pueblo v. Rodríguez Román*, 128 D.P.R. 121 (1991); *Vélez v. Srio. de Justicia*, 115 D.P.R. 533 (1984); *Ortiz v. Cruz Pabón*, 103 D.P.R. 939 (1975); *Rodríguez v. Concreto Mixto, Inc.,* 98 D.P.R. 579 (1970).

A la luz de las determinaciones de hechos que hiciera la Hon. Juez Rivera de Martínez, forzosa resulta la conclusión de que, efectivamente, el Fiscal Meléndez Berríos "consultó" con el policía Cabán Muñiz antes de proceder a transigir, o llegar a una alegación preacordada, con la representación legal de los imputados de delito, en específico, la del coacusado Javier Dávila Delgado.

Específicamente surge de las referidas determinaciones de hechos que el Fiscal Meléndez Berríos "orientó", o explicó, al policía Cabán Muñiz "en cuanto al alcance de la alegación discutida por él con los abogados previamente". Al testigo-víctima objetar, o "formular interrogantes", respecto a la alegación preacordada, el representante del Ministerio Público, incluso, le dio una explicación sobre el por qué de su proceder, no volviendo a insistir el policía Cabán Muñiz en su objeción.

No tenemos duda sobre el hecho de que el intercambio ocurrido entre el fiscal y el policía estatal pudo haber sido más amplio o abarcador. Tampoco tenemos duda alguna, sin embargo, de que el mismo es uno que, como originalmente resolviera la juez de instancia, "se ajusta a derecho". En otras palabras, somos del criterio que en efecto hubo la

"consulta" que requiere la Ley de Protección a las Víctimas y Testigos; esto es, el representante del Ministerio Fiscal en el presente caso escuchó o tomó en cuenta el parecer de la víctima del caso, respecto a la propuesta alegación preacordada.

Resulta obvio, en consecuencia, que en el presente caso se cumplieron, de manera sustancial, con los requisitos exigidos por la Ley de Protección a las Víctimas y Testigos, que la acción del Ministerio Fiscal de acceder a la alegación preacordada fue una hecha de buena fe, y que el tribunal de instancia *no* incurrió en un "abuso de discreción" al aceptar la referida alegación preacordada.

*Procede, por lo tanto, la revocación de la sentencia emitida en el caso por el antiguo Tribunal de Apelaciones y decretar la reinstalación de las sentencias de archivo y sobreseimiento originalmente emitidas por el antiguo Tribunal Superior de Puerto Rico, Sala de San Juan, en cuanto a Javier Delgado Dávila.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita. El Juez Presidente Señor Andréu García se inhibió.