# 2003 DTA 96

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I DE SAN JUAN, PANEL IV**

REXACH CONSTRUCTION COMPANY, INC.
Apelante

v.

QB CONSTRUCTION, SE, ETC.
Apelados

Núm. KLAN-02-01302

San Juan, Puerto Rico, a 30 de mayo de 2003

Panel integrado por su Presidente, el Juez Gierbolini,
y los Jueces Cordero y Rodríguez Muñiz

Gilberto Gierbolini, Juez Ponente

El 20 de noviembre de 2002, Rexach Construction Company, Inc. (en adelante Rexach) presentó Escrito de Apelación y nos solicitó la revocación de la Sentencia emitida el 14 de octubre de 2002, notificada el 21 de octubre de 2002, por el Tribunal de Primera Instancia, Sala de San Juan, en el caso de *Rexach Construction Company, Inc. v. Q.B. Construction, S.E. y Otros,* Civil Número KAC-1999-1072 (603) sobre Incumplimiento de Contrato y Daños y Perjuicios. Mediante dicha Sentencia, el Tribunal de Primera Instancia declaró Con Lugar la Moción de Desestimación presentada por la tercera demandada American Airlines, Inc. (en adelante American).

Por los fundamentos que expondremos, **CONFIRMAMOS** la Sentencia apelada.

## II

El 29 de julio de 1999, la apelante Rexach presentó Demanda en el Tribunal de Primera Instancia, Sala de San Juan, contra QB Construction, SE (en adelante QB), Luis E. Lavergne, su esposa Jane Doe y la Sociedad Legal de Gananciales. En la misma, la demandante alegó que la demandada había incurrido en incumplimiento de contrato y daños y perjuicios relacionados con supuestos atrasos e incrementos en costos durante la construcción y ampliación del nuevo terminal de pasajeros de American en el Aeropuerto Internacional Luis Muñoz Marín en Carolina, Puerto Rico.

En cumplimiento a una orden del Tribunal de Primera Instancia que entendía que American era una parte indispensable en el pleito, el 30 de enero de 2002, luego de varios incidentes procesales y presentación por ambas partes de diferentes escritos, mociones y oposiciones correspondientes, la Demanda fue enmendada por segunda ocasión con el fin de incluir a American como parte demandada. En cuanto a ésta, Rexach alegó que tenía o debió haber tenido conocimiento sobre los incumplimientos del contrato por parte de QB y/o que American fue la causante de algunos de dichos atrasos y aumentos.

Por su parte, el 11 de febrero de 2002, QB presentó demanda contra terceros contra American. La demandante reclamó que American le respondiera por cualquier suma de dinero que tuviere que pagar a Rexach y/o le respondiera directamente a esta última, en virtud de unas cláusulas del contrato habido entre ambos.

El 24 de mayo de 2002, American solicitó la desestimación de la segunda Demanda Enmendada y de la Demanda contra Tercero presentadas por Rexach y QB, respectivamente, de conformidad con la Regla 10.2 de Procedimiento Civil. American argumentó en su escrito que la desestimación de las demandas procedía como cuestión de derecho porque las mismas debieron ser presentadas ante los tribunales del estado de Texas y no en Puerto Rico. Su argumento estuvo basado en el acuerdo pactado en el contrato original suscrito con la contratista QB y en virtud de los subcontratos suscritos entre ésta y el subcontratista, Rexach. El 4 de septiembre de 2002, Rexach presentó su escrito de oposición a dicha solicitud de desestimación y, en síntesis, alegó que dado el hecho de que la parte demandante y la parte demandada habían presentado sus correspondientes escritos en los tribunales de Puerto Rico y estaban sometidos voluntariamente a su jurisdicción, la ley de Puerto Rico era la que debía ser aplicada para resolver cualquier reclamación o pleito entre las partes.

El 14 de octubre de 2002, notificada el 21 de octubre de 2002, el Tribunal de Primera Instancia, Sala Superior de San Juan, declaró **CON LUGAR** la Moción de Desestimación presentada por American y en consecuencia, emitió Sentencia ordenando la desestimación tanto de la segunda Demanda Enmendada como de la Demanda contra Terceros. El tribunal, luego de realizar sus determinaciones de hechos y conclusiones de derecho, dispuso que la cláusula de selección de ley y foro contenida en el contrato principal *"es clara, libre de ambigüedades y no está sujeta a más interpretaciones que no sean las que surgen del propio texto."* Además, indicó que dicha cláusula, la cual fue posteriormente incorporada en los subcontratos, estaba redactada en

términos obligatorios y no permisivos y, por lo tanto, obligaba a Rexach y a QB a litigar cualquier disputa en contra de American en el estado de Texas y sujeto a las leyes de dicho estado. También concluyó que no hubo un pacto en contrario entre QB y Rexach que variara la cláusula 38.1 del contrato principal y que, independientemente de lo anterior, nada de lo pactado entre Rexach y QB en los subcontratos podía afectar adversamente los derechos que American tenía bajo el contrato principal.

Inconforme con dicha Sentencia, el 5 de noviembre de 2002, Rexach presentó Moción de Reconsideración ante ese foro y la parte demandada presentó su correspondiente oposición. El Tribunal de Primera Instancia no tomó acción alguna al respect0, por lo que la misma fue rechazada de plano.

No conforme, el 20 de noviembre de 2002, Rexach compareció ante este Tribunal mediante escrito de Apelación y nos solicitó la revocación de la sentencia emitida por el Tribunal de Primera Instancia. En síntesis, el Apelante alegó que el Tribunal de Primera Instancia erró al desestimar la Segunda Demanda Enmendada utilizando como fundamento determinaciones de hechos que según él, son interpretaciones y conclusiones de derecho no sostenidas por los documentos que obran en el expediente del caso; erró al interpretar una cláusula de selección de foro como obligatoria y no permisiva, y al interpretar que las reclamaciones contenidas en la segunda demanda enmendada le son aplicables las leyes del estado de Texas.

El 27 de diciembre de 2002, la parte apelada presentó Escrito de Oposición a la Apelación y alegó que la cláusula de selección de foro y ley incluida en el contrato principal suscrito por QB y American, y adoptada e incorporada sin reservas por la Apelante en sus subcontratos con QB, tenía que ser aplicada a la presente reclamación, dado el hecho de que la misma *"es clara y específica y no deja margen de duda en cuanto a que la intención de las partes era dejar establecido que la interpretación del contrato y todo lo relacionado con el mismo estaría gobernado por la ley del estado de Texas y dilucidado en dicha jurisdicción."*

## III

En Puerto Rico rige el principio de la libertad de contratación y como parte de este principio, las partes contratantes *"pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, a la moral, ni al orden público,"* Artículo 1207 del Código Civil (31 L.P.R.A. Sección 3372). ■ Estas obligaciones tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos, Artículo 1044 del Código Civil (31 L.P.R.A. Sección 2994).

Un principio general de nuestro ordenamiento jurídico es que los contratos quedan perfeccionados con el mero consentimiento de las partes y a partir de ese momento, vienen obligados no sólo a cumplir con lo expresamente pactado, sino también con las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley, Artículo 1210 del Código Civil (31 L.P.R.A. Sección 3375); *Ramírez v. Club Calas de Palmas*, 123 D.P.R. 339, 345 (1989). La validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes, Artículo 1208 del Código Civil (31 L.P.R.A. Sección 3373).

Más aún, el Tribunal Supremo ha dicho que *"cuando los términos de un contrato, sus condiciones y exclusiones, son claros y específicos y no dan margen a ambigüedades o diferentes interpretaciones, así deben aplicarse,"* *Unysis Puerto Rico, Inc. v. Ramallo Brothers Printing, Inc.*, 128 D.P.R. 842, 852 (1991). En este caso, a la página 852, el Tribunal Supremo; citando a Diez-Picaso, expresó que *"la obligatoriedad del contrato se funda, pues, de acuerdo con esta idea en una norma ética derivada de la buena fe, que exige no defraudar la confianza que en otro pueda haber creado nuestra promesa o nuestra conducta."*

Por otra parte, el Código Civil contiene unas reglas básicas y muy importantes sobre interpretación de los contratos que son utilizadas para determinar el alcance de las cláusulas pactadas por las partes en los contratos, las cuales son las siguientes:

*"Cualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar,"* Artículo 1235 (31 L.P.R.A. Sección 3473).

*"Si alguna cláusula de los contratos admitiere diversos sentidos, deberá entenderse en el más adecuado para que produzca efecto,"* Artículo 1236 (31 L.P.R.A. Sección 3474).

*"Las cláusulas de los contratos deberán interpretarse las unas por las otras, atribuyendo a las dudosas el sentido que resulte del conjunto de todas,"* Artículo 1237 (31 L.P.R.A. Sección 3475).

*"Las palabras que puedan tener distintas acepciones serán entendidas en aquélla que sea más conforme a la naturaleza y objeto del contrato,"* Artículo 1238 (31 L.P.R.A. Sección 3476).

Una de las normas más importantes de interpretación de los contratos está contenida en el Artículo 1233 (31 L.P.R.A. Sección 3471) de nuestro Código Civil y dispone que:

*"Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas."*

En el caso ante nos, la controversia principal que tuvo ante su consideración el Tribunal de Primera Instancia fue el determinar el alcance de una cláusula contractual de selección de ley y foro contenida en el contrato principal suscrito entre American y la contratista QB, la cual, más tarde, fue incorporada y adoptada por la Apelante en los subcontratos que otorgó con esta última.

En síntesis, las alegaciones de las parte son las siguientes: American sostiene que en su contrato principal con QB pactaron que las leyes y el derecho del estado de Texas regirían todas las reclamaciones que surgieran con relación a las obras de construcción objetos del contrato y que las mismas serían dilucidadas en los tribunales del Condado de Tarrant en dicho estado. American sostiene que la controversia debe ser adjudicada a base de la normativa expuesta por nuestro Tribunal Supremo en el caso de *Unysis, supra,* en el cual dicho foro aplicó la doctrina de *"contactos sustanciales"* y reconoció la validez de las cláusulas de selección de ley. También, en ese caso, el Tribunal Supremo de Puerto Rico aplicó el razonamiento del Tribunal Supremo de Estados Unidos en el caso de *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972), y reconoció la validez de las cláusulas de selección de foro.

Por su parte, la Apelante sostiene que la cláusula de selección de ley y foro no es de naturaleza mandatoria, sino permisiva y que, por lo tanto, está en libertad de escoger otro foro para ventilar las reclamaciones de este litigio, que no sea el que es indicado en dicha cláusula contractual. Contrario a American, la Apelante sostiene que la determinación de cuál es el foro apropiado debe ser hecha a base de la doctrina de *"forum non conveniens"*.

A base de estas alegaciones, discutiremos la jurisprudencia aplicable.

En el caso de *Walborg Corporation v. Tribunal Superior,* 104 D.P.R. 184 (1975), el Tribunal Supremo expuso en términos generales que la validez de las cláusulas contractuales en las que las partes seleccionan de antemano la ley, será de aplicación a reclamaciones que surjan de o estén relacionadas con el contrato. En ese caso, el tribunal adoptó los conceptos reconocidos en el *"Restatement of the Laws (2d.), Conflict of Laws"* Sección 187 (1971), y reconoció la validez de estas cláusulas cuando las mismas no contravienen consideraciones fundamentales de orden público y la jurisdicción seleccionada tiene contactos sustanciales con el contrato. El Tribunal Supremo no definió el término *"contactos sustanciales"*.

En cuanto al alcance de "*contactos sustanciales*", el "*Restatement of the Laws*", *supra*, dispone lo siguiente:

"*When the state of the chosen law has some **substantial relationship** to the parties of the contract, the parties will be held to have had a reasonable basis for their choice. This will be the case, for example, when this state is that where performance by one of the parties is to take place or where one of the parties is domiciled or has his principal place of business.*"

Nuestro más alto foro acometió en el caso de *Unisys*, *supra*, la tarea que dejó inconclusa en *Wallborg*, *supra*. Para ello, acudió a la jurisprudencia federal norteamericana, donde este asunto ha sido tratado extensamente. Dicho tribunal expresó en ese caso lo siguiente:

"*En la jurisdicción federal, como regla general, se le ha dado validez a las cláusulas contractuales de selección de foro. En Midwest Mech. Contr. v. Tampa Constructors, Inc., 659 F. Supp. 526, 530 (W.D. Mo. 1987), se dijo:*

'*[I]t is settled... that parties to a contract may agree in advance to submit to the jurisdiction of a given court...' National Equipment Rental, Ltd v. Szukhent, 375 U.S. 311, 315-16, 84 S. Ct. 411, 414, 11 L. Ed. 2d 354 (1964). A party can freely consent to the personal jurisdiction of a court because personal jurisdiction is an individual right capable of being waived. Insurance Corp. of Ireland v. Compagnie des Bauxites, 456 U.S. 694, 703, 102 S. Ct. 2099, 2105, 72 L. Ed. 2d 492 (1982). However, the forum selection clause containing the defendant's consent must comply with applicable due process standards. Burger King Corp. v. Rudzewics, 471 U.S. 462, 105 S. Ct. 2174, 2182 n. 14, 85 L. Ed. 2d 528 (1985). Thus, the clause must have been obtained through freely negotiated agreements absent fraud and overreaching and its enforcement must not be unreasonable and unjust. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L. Ed. 2d 513 (1972)...'.*"

Nuestro Tribunal Supremo expresó en ese caso que ese tipo de cláusula contractual de selección de foro está íntimamente relacionada con la política pública de no imponer trabas al comercio interestatal e internacional. Además, señaló que el hacer valer una cláusula de selección de foro protege los intereses legítimos de las partes, sus expectativas y sobre todo, fomenta los intereses vitales del sistema de justicia. Su conclusión estuvo apoyada en varios casos resueltos por los tribunales federales. ■

El Tribunal incorporó, en ese caso, la siguiente cita del caso de *Bremen*, *supra*, página 15, el cual es el caso normativo del Tribunal Supremo de los Estados Unidos sobre esta materia:

"*Thus in the light of present day-realities and expanding international trade, we conclude that the forum selection clause should control absent a strong showing that it should be set aside.*"

La doctrina vigente en la esfera federal, aplicable por nuestro Tribunal Supremo a Puerto Rico, favorece las cláusulas contractuales de selección de foro. A través de la jurisprudencia, ha quedado determinado que éstas son válidas *prima facie* y razonables, a menos que quede demostrado lo contrario. Para derrotar esta fuerte presunción, la parte que se opone a la misma tiene el peso de la prueba, *Unysis*, *supra*, página 857. Véase, además, *Bremen*, *supra*, páginas 520, 523.

La decisión de *Bremen*, *supra*, fue posteriormente sostenida y depurada por el Tribunal Supremo de Estados Unidos en el caso normativo *Carnival Cruises Lines, Inc. v. Shute*, 499 U.S. 585 (1991), donde al igual que la Apelante en el presente caso, la demandante, la línea de cruceros Carnival, es una corporación doméstica e internacional que hace negocios a través de todos los Estados Unidos, Puerto Rico, Islas Vírgenes y países extranjeros. En ese caso, el tribunal sostuvo la validez de una cláusula de selección de foro, basado en el hecho de que debido a que una línea de cruceros típicamente transporta pasajeros de diferentes localidades, podría ser

inferido que ésta tenía un interés particular y razonable de limitar el número de foros a cuyas jurisdicciones puede estar potencialmente sujeta a ser demandada.

Más reciente aún, en el caso de *Silva v. Enciclopedia Británica, Inc.,* 2001 US App. Lexis 2397 (1st. Cir. Feb. 14, 2001), la Corte de Apelaciones para el Primer Circuito resolvió sobre la validez de una cláusula de selección de foro y tomó como base lo resuelto por el Tribunal Supremo de los Estados Unidos en el caso de *Carnival, supra.* Específicamente, en ese caso, señaló que la ley de Puerto Rico, según establecida en *Unysis, supra,* está basada en las mismas normas de derecho aplicables a este tipo de cláusulas en la esfera federal.

Así, también, es menester mencionar el caso de *AGR Financial, L.L.C. v. Ready Staffing, Inc.,* 9 F. Supp. 2d 399 (S.D.N.Y. 2000), citado por el Tribunal de Primera Instancia en su Sentencia. Ese caso, resuelto por el Tribunal de Distrito Federal del Distrito Sur de Nueva York, trataba sobre un contrato que contenía una cláusula redactada en términos idénticos a la del caso que nos ocupa. La mencionada cláusula utilizaba la misma frase *"may be brought in"* y le brindaba la opción a los contratantes de dilucidar la acción en el foro estatal o federal de Nueva York. El tribunal, en ese caso, decidió que el uso de la palabra *"may"* no negaba la naturaleza **obligatoria** de la cláusula de selección de foro y, por lo tanto, había que aplicar el análisis del caso de *Bremen, supra.*

Por otro lado, en cuanto a cláusulas de selección de ley respecta, en *Ferrofluidics Corp. v. Advanced Vaccum Components, Inc.,* 968 F. 2d 1463, 1467-1468 (1st. Cir. 1992), el Tribunal Federal de Apelaciones para el Primer Circuito tuvo ante sí una controversia sobre la aplicabilidad de una cláusula, mediante la cual las partes seleccionaron la ley del estado de Massachusetts como la ley aplicable a las controversias que surgieran del contrato. El Tribunal, basado en el *"Restatement of the Laws", supra,* estableció que cuando las partes seleccionan la ley de una jurisdicción en particular para determinados asuntos, estas cláusulas serán honradas por los tribunales si el contrato tiene cualquier relación significativa con tal jurisdicción. El Tribunal específicamente expresó:

*"...we inquire whether the chosen jurisdiction has any significant relationship rather than whether another jurisdiction has a more significant relationship." Ferrofluidics Corp., supra,* página 1467.

En ese caso, el Tribunal concluyó que la demandante estaba incorporada en Massachusetts y que realizaba la mayor parte de su negocio desde ese estado y esto constituia suficiente relación con el contrato para que el tribunal reconociera la validez legal de la cláusula de selección de la ley aplicable. ■

Pasemos ahora a aplicar la norma de derecho y jurisprudencia discutida a los hechos del caso que nos ocupa.

## IV

En el presente caso, la Apelante alegó la comisión de tres errores por parte del Tribunal de Primera Instancia: 1) erró al desestimar la segunda Demanda Enmendada utilizando como fundamento determinaciones de hechos que, según él, son interpretaciones y conclusiones de derecho no sostenidas por los documentos que obran en el expediente del caso; 2) erró al interpretar una cláusula de selección de foro como obligatoria y no permisiva, y 3) erró al interpretar que las reclamaciones contenidas en la segunda Demanda Enmendada le son aplicables las leyes del estado de Texas. Luego de analizar el expediente de autos, así como el derecho aplicable, concluimos que dichos errores no fueron cometidos.

Para poder resolver si verdaderamente el Tribunal de Primera Instancia incurrió en el primer error, es necesario que examinemos el ámbito de la revisión de los tribunales apelativos sobre las determinaciones de hechos formuladas por el tribunal de instancia.

Constituye norma reiterada de derecho que no debemos "... *intervenir con las determinaciones de hechos que hace un tribunal de instancia ni sustituir nuestro criterio por el del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su "demeanor," Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R. 357 (1982), a menos que se demuestre que dicho foro actuó con pasión, prejuicio o parcialidad," Vélez v. Srio. de Justicia,* 115 D.P.R. 533 (1984); *López Vicil v. I.T.T. Intermedia,* 142 D.P.R. 857; *Pueblo v. Dávila Delgado,* 143 D.P.R. 157. La apreciación de la prueba efectuada por el Tribunal de Primera Instancia merece gran deferencia, por lo que sólo en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, los tribunales de apelaciones no intervienen en cuanto al trasfondo fáctico determinado por instancia, *Sepúlveda Rivas v. Departamento de Salud,* 145 D.P.R. 560 (1998); *Sánchez Rodríguez v. López Jiménez,* 116 D.P.R. 172 (1985); *Pérez Cruz v. Hosp. La Concepción,* 115 D.P.R. 721 (1984).

El alegado error en las determinaciones de hechos del Tribunal de Primera Instancia no fue cometido. No encontramos error manifiesto, pasión, prejuicio o parcialidad que justifique intervenir con la apreciación de la prueba y evaluación de credibilidad que hizo el juez de instancia. Por el contrario, un análisis de la totalidad del expediente, nos convence de que las determinaciones del tribunal *a quo* son producto de un análisis racional y jurídico de la evidencia recibida y que obra en el expediente del caso.

## V

Por estar los errores dos y tres íntimamente relacionados entre sí, pasaremos a discutirlos en conjunto.

La cláusula de selección de ley y foro consignada en el contrato principal entre American y QB era la siguiente:

*"38.1 This Agreement shall be governed by the laws of the State of Texas and the applicable laws of the United States of America. This Agreement has been entered into in Tarrant County, Texas and shall be performable for all purposes in Tarrant County, Texas. Any action or proceeding against the Contractor under or in connection with this Agreement or any of the Contract Document may be brought in any state or federal court in Tarrant County, Texas."*

Luego de analizar la cláusula, coincidimos con la apreciación del Tribunal de Primera Instancia en que la misma es clara, libre de ambigüedades y no está sujeta a más interpretaciones que no sean las que surgen de su propio texto. Además, de una lectura **integral** de la totalidad de la misma, coincidimos también con dicho foro en que es de carácter mandatorio y no permisivo. Dicha cláusula debe ser interpretada en su totalidad y no aisladamente como pretende hacerlo la Apelante, de modo que pueda ser entendida en su contexto correcto y atribuirle el significado correspondiente de acuerdo a la naturaleza del contrato y las expectativas de las partes al momento de su otorgamiento.

Como ya hemos expresado en este escrito, es norma general establecida en nuestro Código Civil, el que las cláusulas de los contratos deberán ser interpretadas las unas con las otras, atribuyendo a las dudosas el sentido que resulte del conjunto de **todas,** Artículo 1237 del Código Civil, *supra.* También es norma general el que las palabras que puedan tener distintas acepciones serán entendidas en aquélla que sea **más conforme a la naturaleza y objeto del contrato,** Artículo 1238 del Código Civil, *supra.* No es aceptable el que una de las partes contratantes saque de contexto una palabra o frase de una cláusula de un contrato y como resultado de esto pueda producir un resultado absurdo e inconsistente que convierta la cláusula en una sin sentido o con un sentido no conforme al resto de sus partes.

La cláusula expone clara y específicamente que el contrato "*shall be governed by the laws of the State of Texas. This Agreement has been entered into in Tarrant County, Texas, and shall be perfomable for all purposes in Tarrant County, Texas.*" No deja margen de duda alguna de que las partes, al suscribir el contrato

principal, quedaron obligadas y acordaron que la ley aplicable sería la del estado de Texas y de que la ejecución y cumplimiento del contrato sería en el Condado de Tarrant en el estado de Texas. Los términos utilizados claramente son mandatorios y no permisivos y no dejan lugar para otras interpretaciones.

En cuanto al foro en el que deben ser resueltas las reclamaciones que surjan entre las partes como consecuencia de la negociación, tampoco existe duda alguna de que las partes seleccionaron al Condado de Tarrant en Texas. Al utilizar la frase *"may be brought in any state or federal court in Tarrant County, Texas"* su único efecto fue conceder una opción a las partes en cuanto al foro en el cual podría ser presentada la acción, el estatal o el federal de Texas. No obstante, adoptamos las palabras utilizadas por el Tribunal de Primera Instancia en su Sentencia para expresar que *"este Tribunal no tiene duda alguna de que ya fuera en el tribunal estatal o federal, la acción obligatoriamente tiene que instarse en el Tarrant County, Texas. Si le diéramos otra interpretación a esta cláusula, la misma sería aislada, ajena, no armonizable y contraria al sentido del resto de la cláusula, y constituiría una interpretación abrupta y forzada que tendría el efecto de desnaturalizar lo claramente pactado por las partes en el contrato y de defraudar las expectativas que motivaron a éstas a realizar esos contratos."*

De igual forma, coincidimos con el Tribunal de Primera Instancia en que la apelante, Rexach, está equivocada al pretender darle una connotación a la frase *"may be brought"* que sencillamente no tiene, con el único propósito de alterar la naturaleza obligatoria de la cláusula de selección de ley y foro. Esto sería obviar y peor aún, ir en contra de las normas elementales de nuestro Código Civil, anteriormente expuestas en la parte III de este escrito.

Por lo tanto, entendemos que el Tribunal de Primera Instancia actuó correctamente al analizar la cláusula de selección de ley y foro a base de los principios expuestos por nuestro Tribunal Supremo en *Unysis, supra,* y por el Tribunal Supremo de los Estados Unidos en el caso de *Bremen, supra,* y no a base de las normas que regulan la doctrina de *forum non conveniens,* como alega la parte Apelante. En el caso *Standard Química v. Central Hispano Intern, Inc.,* 989 F. Supp. 74, 76 (D.P.R.1997), el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, citando a *Bremen, supra,* resolvió que cuando una cláusula de selección de foro es aplicable, los argumentos de *forum non conveniens* deben ser excluidos.

En cuanto a si la cláusula cumple también con los criterios necesarios para determinar si la misma es obligatoria en cuanto al aspecto de selección de ley, a la luz de la jurisprudencia local y federal, y aplicando la doctrina de *"contactos sustanciales"* reconocida en el *"Restatement of the Laws", supra,* concluimos que la misma es clara y específica en cuanto a que la intención de las partes era que toda controversia relacionada con el contrato sería gobernado por la ley del estado de Texas.

No hay duda de que en el caso que nos ocupa existen los *"contactos sustanciales"* necesarios para que dicha cláusula sea válida. Según lo dispuesto en el *"Restatement of the Laws", supra,* los contactos sustanciales existen cuando el cumplimiento por una de las partes ocurre en el foro de la ley seleccionada como aplicable o cuando una de las partes está domiciliada o tiene su lugar principal de negocios en el estado cuya ley ha de aplicar.

En el presente caso, están las dos situaciones anteriormente descritas. El contrato principal entre American y QB claramente dispone que la ejecución y cumplimiento del mismo sería en el estado de Texas. Inclusive, de los propios subcontratos entre la Apelante y QB surge que los mismos estarían gobernados y serían interpretados conforme a las leyes del estado de Texas. Por otro lado, también está la otra situación contemplada en el *"Restatement of the Laws", supra,* en vista de que es un hecho incontrovertible el que American tiene una operación nacional e internacional y tiene contratos en Puerto Rico, Estados Unidos y otros países extranjeros a través de todo el mundo y que toda la operación de su negocio está centralizada en el Condado de Tarrant en Texas. En vista de lo anterior, concluimos que American tiene y tenía en el momento

que suscribió el contrato con QB, un interés legítimo en que todas las controversias relacionadas con sus contratos sean dilucidadas uniformemente en el estado de Texas y bajo la ley de dicha jurisdicción, para evitar así el tener que dilucidar controversias en infinidad de foros y bajo distintas leyes, tomando en consideración la cantidad de destinos a los cuales dicha línea aérea viaja.

Por consiguiente, dado que la intención de las partes fue el someter sus disputas ante los tribunales del Condado de Tarrant en el estado de Texas y bajo las leyes aplicables de dicho estado y de que no existe evidencia en el expediente del caso que demuestre un pacto en contrario por las partes subcontratantes, concluimos que cualquier disputa que involucre a American debe ser dilucidada en el estado de Texas y bajo las leyes de dicho foro, según fue pactado, y no en los tribunales de Puerto Rico.

El Tribunal de Primera Instancia actuó correctamente al declarar **CON LUGAR** la Moción de Desestimación presentada por American y, por consiguiente, desestimar tanto la segunda Demanda Enmendada como la Demanda contra Terceros.

## VI

En virtud de los fundamentos anteriormente expuestos, **CONFIRMAMOS** la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2003 DTA 96

**1.** Véanse, además, *Morales v. Municipio de Toa Baja*, 119 D.P.R. 682, 684-685 (1987); *Flores v. Municipio de Caguas*, 114 D.P.R. 521, 529 (1983); *Umpierre v. Torres Díaz*, 114 D.P.R. 449, 459 (1983); *Tastee Freez v. Negdo. Seg. Empleo*, 108 D.P.R. 495, 501 (1979); *Hernández v. Méndez & Assoc. Dev. Corp.*, 105 D.P.R. 149, 153 (1976); *Castell Enterprises v. Registrador de la Propiedad*, 87 D.P.R. 775, 781 (1963); *Rasa Eng. Corp. v. Daubón*, 86 D.P.R. 193, 196 (1962).

**2.** *The Bremen, et al v. Zapata Off-Shore Co.*, 407 U.S. 1, 16 (1972); *Houston Intern. Televideo v. Technicolor, Inc.*, 647 F. Supp. 554, 555 (1986); *Stewart Organization v. Ricoh Corp.*, 101 L. Ed. 22, 33-34 (1988), (Op. concurrente, Kennedy, Juez Asociado).

**3.** Véase también, *Van Dorn Retail Management, Inc. v. Jim's Oxford Shop, Inc.*, 874 F. Supp. 476 (D.N.H. 1994).