EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Luis E. Martínez Acosta<br><br>Peticionario | Certiorari<br><br>2008 TSPR 123<br><br>174 DPR \_\_\_\_ |
| --- | --- |

Número del Caso: CC-2007-616

Fecha: 18 de julio de 2008

Tribunal de Apelaciones:

       Región Judicial de Mayagüez/Aguadilla Panel IX

Juez Ponente:

       Hon. Héctor Cordero Vázquez

Abogados de la Parte Peticionaria:

       Lcdo. Jesús Antonio Rodríguez Urbano
       Lcdo. Wilmer Rivera Acosta
       Lcdo. Sixto Quiñones Rodríguez

Oficina del Procurador General:

       Lcda. Zaira Z. Girón Anadón
       Procuradora General Auxiliar

Materia: Art. 209 del Código Penal: Fijación de Carteles.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                     CC-2007-616     *CERTIORARI*

Luis E. Martínez Acosta

    Peticionario

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 18 de julio de 2008

Luis E. Martínez Acosta es el presidente del Comité Municipal del Partido Independentista Puertorriqueño (PIP) en el Municipio de Sabana Grande y el candidato a la alcaldía de dicho Municipio por el PIP en las elecciones a celebrarse en Puerto Rico durante el mes de noviembre de 2008. Éste también fungió como candidato a alcalde del referido Municipio por el PIP en las elecciones generales de 2004.

Según surge del expediente, el 7 de octubre de 2006, el agente Ángel S. Ramos de la Policía de Puerto Rico intervino con Martínez Acosta, debido a que este último se encontraba pintando un mensaje alusivo al 60 Aniversario de la

fundación del PIP en las paredes de un puente localizado en la Carretera Número 2, a la altura del Municipio de Sabana Grande, en dirección de Mayagüez a Ponce. Ante ello, el agente Ramos expidió una citación en contra de Martínez Acosta por alegada infracción al Artículo 209 del Código Penal de 2004, el cual tipifica como delito la fijación de carteles en propiedad pública.[1]

Posteriormente, el Tribunal de Primera Instancia, Sala Municipal de Sabana Grande, determinó causa probable para arresto. En la vista celebrada a esos efectos, el agente Ramos testificó que los puentes sitos en la Carretera Número 2 de Sabana Grande se encuentran pasquinados y pintados con mensajes alusivos a distintas instituciones comerciales y a otras colectividades políticas, entiéndase, el Partido Popular Democrático (PPD) y el Partido Nuevo Progresista (PNP). Testificó, además, que ni él, ni ningún agente de la policía adscrito a su cuartel, nunca antes han citado a simpatizantes de las otras colectividades políticas, ni a los representantes de las instituciones

---

[1] El Artículo 209 del Código Penal dispone que: "[t]oda persona que pegue, fije, imprima o pinte sobre propiedad pública, excepto en postes y columnas, o sobre cualquier propiedad privada sin el consentimiento del dueño, custodio o encargado, cualquier aviso, anuncio, letrero, cartel, grabado, pasquín, cuadro, mote, escrito, dibujo, figura o cualquier otro medio similar, sin importar el asunto, artículo, persona, actividad, tema, concepto o materia a que se hace referencia en los mismos, incurrirá en delito menos grave. El tribunal podrá imponer también la pena de restitución".

comerciales, que han fijado carteles, pasquinado o pintado en el mismo lugar que Martínez Acosta lo hizo.

Luego de varios trámites procesales, Martínez Acosta planteó ante el Tribunal de Primera Instancia, Sala Superior de San Germán, que el proceso criminal en su contra era uno selectivo y discriminatorio. Solicitó que se pautara una vista separada para dirimir la procedencia de su defensa de procesamiento selectivo y que, previo a la vista, el tribunal autorizara un descubrimiento de prueba respecto a dicha defensa; específicamente, que el ministerio público le facilitara copia de las denuncias presentadas, si algunas, en los pasados cuatro años en la Región Judicial de Mayagüez por infracción al Artículo 209 del Código Penal; solicitó, además, copia de las autorizaciones que pudiera haber emitido el Departamento de Transportación y Obras Públicas para pasquinar o pintar en los puentes en cuestión.

En apoyo a su solicitud, Martínez Acosta presentó como evidencia varias fotografías de los puentes, sitos en la Carretera Número 2 en Sabana Grande, de las cuales surge que dichos puentes se encuentran pasquinados o pintados con propaganda política, tanto del PPD como del PNP, como propaganda comercial. De igual forma, presentó el testimonio prestado por el agente Ramos en la vista de determinación de causa probable para arresto, del cual surge que no se han citado a otros manifestantes        –

-políticos o comerciantes-- que han pintado o pasquinado en los puentes de la Carretera Número 2 en Sabana Grande.

El Tribunal de Primera Instancia denegó la solicitud de Martínez Acosta. De dicha determinación, este último acudió --mediante recurso de *certiorari*-- ante el Tribunal de Apelaciones; adujo que el tribunal de instancia incidió al no concederle el descubrimiento de prueba y la vista evidenciaria solicitada, a pesar de que cumplió con el *quantum* de prueba necesario, entiéndase, "alguna prueba" tendente a establecer los elementos de la defensa de procesamiento selectivo. El Tribunal de Apelaciones denegó la expedición del recurso de *certiorari*. Concluyó que, mediante la prueba ofrecida, Martínez Acosta no había presentado un caso *prima facie* de procesamiento selectivo que lo hiciera acreedor al descubrimiento de prueba y a la vista evidenciaria solicitada.

Inconforme, Martínez Acosta acudió --mediante recurso de *certiorari*-- ante este Tribunal. Aduce que el Tribunal de Apelaciones erró al concluir que para obtener un descubrimiento de prueba y una vista evidenciaria sobre procesamiento selectivo es necesario establecer un caso *prima facie*, pues, en la etapa inicial en que se encuentra su reclamo, el *quantum* de prueba necesario es "alguna prueba" tendente a establecer los elementos de la defensa de procesamiento selectivo.

El 18 de julio de 2007 expedimos el recurso y, en auxilio de nuestra jurisdicción, paralizamos los

procedimientos ante el Tribunal de Primera Instancia, Sala Superior de San Germán. Estando en posición de resolver el recurso radicado, procedemos a así hacerlo.

I

El sistema republicano de gobierno, como el nuestro, se compone de tres ramas de gobierno, separadas e independientes, cada una con funciones distintas y específicas. Artículo 1, Sección 2, de la Constitución del Estado Libre Asociado de Puerto Rico.[2] Es así como la Rama Legislativa tiene el deber de crear y aprobar leyes; la Rama Ejecutiva tiene el deber de poner en vigor las mismas; y la Rama Judicial el deber de interpretarlas y de revisar la validez de las actuaciones de las otras dos ramas de gobierno.

En virtud de esta separación de poderes y en relación con la situación específica de hechos hoy ante nuestra consideración, hemos resuelto que la Rama Ejecutiva tiene amplia discreción al momento de decidir a quién encausa o contra quién insta una acción criminal. En palabras del Tribunal Supremo de los Estados Unidos en Wayte v. U.S., 470 U.S. 598(1985):

> [s]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not

---

[2] Dicho Artículo dispone que: "[e]l gobierno del Estado Libre Asociado de Puerto Rico tendrá forma republicana y sus Poderes Legislativo, Ejecutivo y Judicial, según se establecen por esta Constitución, estarán igualmente subordinados a la soberanía del Pueblo de Puerto Rico".

> to prosecute, and what charge to file … generally rests entirely in his discretion. This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecutor's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decision-making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.

Ello no obstante, lo antes expuesto no significa que la discreción de encausar concedida al poder ejecutivo sea absoluta o irrestricta, pues ésta se encuentra sujeta a limitaciones constitucionales. "…[A]lthough prosecutorial discretion is broad, it is not unfettered. Selectivity in the enforcement of criminal laws is subject to constitutional constraints". Wayte v. U.S., ante.

Ya desde el 1886, en Yick Wo v. Hopkins, 118 U.S. 356 (1886), el más alto foro federal dispuso que la igual protección de las leyes constituye una limitación constitucional a la discreción del ejecutivo de encausar. En el referido caso, el Tribunal Supremo de los Estados Unidos reconoció que la administración, desigual y opresiva, de las leyes por parte de las autoridades públicas y, por ende, del estado, constituye una violación a la igual protección de las leyes consagrada en la

Enmienda 14 de la Constitución de los Estados Unidos.[3] Al

así resolver, la Corte Suprema federal expresó:

> [t]hough the law itself be fair on its face and
> impartial in appearance, yet, if it is applied
> and administered by public authority with an evil
> eye and an unequal hand, so as practically to
> make unjust and illegal discriminations between
> persons in similar circumstances, material to
> their rights, the denial of equal justice is
> still within the prohibition of the Constitution.

Posteriormente, en Oyler v. Boles, 368 U.S. 448

(1962), el Tribunal Supremo de los Estados Unidos limitó

sus expresiones en Yick Wo v. Hopkins, ante, al establecer

que el ejercicio consciente de selectividad al momento de

encausar --por sí solo-- no constituye una violación

constitucional. Sólo aquella selectividad basada en

estándares injustificables, tales como raza, religión o

---

[3]  La Enmienda 14 de la Constitución de los Estados Unidos
prohíbe que un estado le niegue la igual protección de las
leyes a una persona dentro de su jurisdicción. A pesar de
que no existe una disposición similar en dicha Constitución
dirigida  al gobierno federal, se entiende que la Enmienda
5 sobre el debido proceso de ley le impone iguales
limitaciones al gobierno federal. W. R. La Fave, Criminal
Procedure, Tercera Edición, Vol. 4, Thomson West, 2007, p.
168. "The equal protection guarantee applies to both the
state and federal governments although the restrictions
have two totally distinct bases. The equal protection
clause of the Fourteenth Amendment by its own terms applies
only to state and local governments. There is no equal
protection clause that governs the actions of the federal
government, and the Court has not attempted to make the
clause itself applicable to federal acts. However, if the
federal government classifies individuals in a way which
would violate the equal protection clause, it will be held
to contravene the due process clause of the Fifth
Amendment." R. D. Rotunda & J. E. Nowak, Treatise on
Constitutional Law: Substance and procedure, Tercera
Edición, Vol. 3, West Group, 1999, p. 206.

cualquier otra clasificación arbitraria, configura una violación a la igual protección de las leyes.

Conforme a lo antes expuesto, aquel imputado que haya sido víctima de una selección discriminatoria por parte del estado tiene a su haber la defensa de procesamiento selectivo. A grandes rasgos, el procesamiento selectivo "es materia de una defensa afirmativa a alegarse y probarse por el imputado en el foro de instancia, que conlleva establecer un efecto discriminatorio en la aplicación de la ley y que el proceso en su contra fue motivado por esas razones". Pueblo v. Rexach Benítez, 130 D.P.R. 273, 280(1992).

Para prevalecer en su reclamo —conforme la jurisprudencia federal— el imputado debe presentar un caso *prima facie* de procesamiento selectivo, mediante prueba que establezca que: 1) personas similarmente situadas no han sido acusadas; y que 2) la selección discriminatoria por parte del ministerio público ha sido intencional y de mala fe, basada en consideraciones no permitidas como raza, religión, afiliciación política o el ejercicio de derechos constitucionales protegidos, como la libertad de expresión. Véase: Wayte v. U.S., ante; W. R. La Fave, Criminal Procedure, p. 170.[4]

---

[4] "… [T]he three essential elements of a discriminatory prosecution claim [are]: (1) that other violators similarly situated are generally not prosecuted; (2) that the selection of the claimant was intentional or purposeful;

(Continúa . . .)

Es decir, le corresponde al imputado probar que la selección por parte del ministerio público, al momento de encausar, <u>tuvo un efecto y propósito discriminatorio</u>. Una vez establecido un caso *prima facie* de procesamiento selectivo, el peso de la prueba se desplaza hacia el estado, al cual le corresponde refutar la presunción de selectividad discriminatoria en el proceso, mediante prueba que establezca que la acusación del imputado no responde a razones no permitidas.

El *quantum* de prueba exigido para que un imputado prevalezca en su reclamo de procesamiento selectivo es uno riguroso. Dicha rigurosidad no sólo encuentra justificación en la amplia discreción concedida al ejecutivo en materia de encausamiento, sino tambien en la presunción de regularidad y corrección por parte del ejecutivo en el descargo de sus funciones. Véase: <u>U.S. v. Armstrong</u>, 517 U.S. 456 (1996). "Because we presume that criminal prosecutions are undertaken in good faith, without intent to discriminate, the defendant bears the initial burden of demonstrating selective enforcement." W. R. La Fave, <u>Criminal Procedure</u>, p. 172.

<u>Ahora bien</u>, ¿significa ello que debe requerírsele al imputado establecer un caso *prima facie* de procesamiento

---

and (3) that the selection was pursuant to an arbitrary classification."

selectivo <u>previo</u> al momento de solicitar un descubrimiento de prueba y una vista evidenciaria sobre dicha defensa?

En el 1996, la Corte Suprema de los Estados Unidos resolvió el caso <u>U.S. v. Armstrong</u>, ante; <u>en el mismo tuvo la oportunidad de expresarse respecto al *quantum* de prueba necesario para que proceda una solicitud de descubrimiento de prueba sobre la defensa de procesamiento selectivo</u>. Al respecto, estableció que para ser acreedor a un descubrimiento de prueba <u>el imputado debe presentar "alguna evidencia" tendente a establecer los elementos de la defensa de procesamiento selectivo</u>, entiéndase, efecto y propósito discriminatorio. En específico, <u>resolvió que "alguna evidencia" sobre el elemento de efecto discriminatorio significa presentar "prueba creíble" del tratamiento diferente entre personas similarmente situadas</u> ("credible showing of different treatment of similarly situated persons").[5]

Aun cuando en <u>U.S. v. Armstrong</u>, ante, el Tribunal Supremo Federal dispuso que el *quantum* de prueba para obtener un descubrimiento sobre la defensa de procesamiento selectivo es "alguna evidencia", al requerir que como parte de ese *quantum* de prueba se presente "prueba creíble" sobre el trato distinto entre personas similarmente situadas,

---

[5] El Tribunal Supremo de los Estados Unidos también resolvió que la Regla 16 de Procedimiento Criminal Federal, la cual regula el descubrimiento de prueba a favor de un acusado, no aplica a las solicitudes de descubrimiento de prueba sobre la defensa de procesamiento selectivo.

descartó las expresiones del Juez Marshall en su disenso en

Wayte v. U.S., ante.

En Wayte v. U.S., ante, el Juez Marshall disintió debido a que la mayoría de los miembros de la Corte Suprema Federal procedió a resolver si la prueba presentada por el imputado era suficiente para prevalecer en su reclamo de procesamiento selectivo, mientras que la verdadera controversia se centraba en si la prueba presentada por el imputado era suficiente para concederle un descubrimiento de prueba sobre su defensa. Por su pertinenecia, esbozamos a continuación algunas de las expresiones del Juez Marshall en el referido disenso:

> [t]he Courts of Appeals have adopted a standard under which a defendant establishes his right to discovery if he can show that he has a colorable basis for a selective prosecution claim. **To make this showing, a defendant must allege sufficient facts in support of his claim of selective prosecution claim to take the question past the frivolous state**. In general, a defendant must present some evidence tending to show the existence of the essential elements of the defense.
> This standard… is consistent with our exhortation that the need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. It also recognizes that most of the relevant proof in selective prosecution cases will normally be in the Government's hands. At the same time, the standard adequately protects the Government from attempts by the defense to seek discovery as a means of harassment or of delay. …
> To evaluate the merit of Wayte's claim, I consider the elements of a *prima facie* case of selective prosecution and ascertain whether Wayte has made **a nonfrivolous showing** as to the existence of these elements. It is important to

> bear in mind at this stage that Wayte need not have made out a full *prima facie* case in order to be entitled to discovery. A *prima facie* case, of course, is one that if unrebutted will lead to a finding of selective prosecution. It shifts to the Government the burden of rebutting the presumption of unconstitutional action. But a defendant need not meet this high burden just to get discovery; **the standard for discovery is merely nonfrivolousness**. …
>
> To make out a *prima facie* case, Wayte must show first that he is a member of a recognizable, distinct class. Second, he must show that a disproportionate number of this class was selected for investigation and possible prosecution. Third, he must show that his selection procedure was subject to abuse or was otherwise not neutral. The inquiry then is whether Wayte has presented **sufficient evidence as to each of the elements to show that the claim is not frivolous**. (Énfasis nuestro.)

Según se deduce del texto del transcrito disenso, el Juez Marshall era del criterio que el término "alguna evidencia" significa aquella prueba necesaria para establecer que el reclamo de procesamiento selectivo no es "frívolo". Al exigir que --previo a un descubrimiento de prueba-- el imputado presente "prueba creíble" sobre el trato diferente entre personas similarmente situadas, se le está exigiendo al imputado presentar prueba específica sobre un grupo control de personas similarmente situadas no encausadas, a pesar de que el imputado busca obtener la informacion de dicho grupo control mediante el descubrimiento de prueba solicitado.

Este requisito, naturalmente, hace prácticamente imposible que la defensa de procesamiento selectivo pueda ser planteada con éxito, básicamente porque --como sostuvo

el Juez Marshall en su disenso-- de ordinario, la prueba con la cual el acusado puede probar su defensa está en posesión del estado y si no se le permite al imputado descubrirla en la etapa de descubrimiento, nunca podrá presentarla. Dicho de otra manera, "by requiring the defendant to produce specific evidence of an unprosecuted control group before granting discovery, the Court subjects the defendant to a "Catch 22": the defendant needs discovery to obtain the information necessary to entitle the defendant to discovery." Anne Bowen Poulin, Prosecutorial discretion and selective prosecution: Enforcing protection after United States v. Armstrong, 34 American Criminal Law Review 1071, Spring, 1997. Véase, además, Melissa L. Jampol, Goodbye to the defense of selective prosecution, 87 Journal of Criminal Law and Criminology 932, Spring, 1997.

Por otro lado, resulta de particular importancia señalar que, en cuanto a la solicitud de una vista evidenciaria sobre la defensa de procesamiento selectivo, varias cortes de circuito federales, que han tenido la oportunidad de expresarse sobre el *quantum* de prueba necesario para obtenerla, han establecido un *quantum* de prueba más flexible.

A modo de ejemplo, podemos mencionar US. v. Saade, 652 F.2d 1126 (1981, 1er Circuito), donde la Corte de Apelaciones de los Estados Unidos para el Primer Circuito estableció que:

> [a] defendant <u>need not</u> … present a *prima facie* case in order to justify an evidentiary hearing. So long as the defendant alleges <u>some facts</u> (a) tending to show that he has been selectively prosecuted, and (b) raising a reasonable doubt about the propriety of the prosecutor's purpose, a district court, in the absence of countervailing reasons, <u>should grant a request for a hearing</u>. Véase, además, <u>U.S. v. Penagaricano-Soler</u>, 911 F.2d 833 (1990, 1er Circuito); <u>U.S. v. Goldberg</u>, 105 F.3d 770 (1997, 1er Circuito).

En términos similares se expresó la Corte de Apelaciones de los Estados Unidos para el Noveno Circuito en <u>U.S. v. Oaks</u>, 508 F.2d 1403 (1974, 9no Circuito), al establecer que procede una vista evidenciaria sobre procesamiento selectivo cuando el imputado ha alegado hechos suficientes de forma tal que la defensa rebase la etapa de frivolidad.

De la normativa antes expuesta, podemos concluir que la jurisprudencia federal "divide" la defensa de procesamiento selectivo en varias etapas y que cada etapa requiere un *quantum* de prueba distinto para que el imputado prevalezca. En <u>primer</u> término, se encuentra la etapa de descubrimiento de prueba, en la cual el imputado deberá presentar "alguna evidencia" tendente a establecer los elementos de la defensa de procesamiento selectivo, lo cual, según establecido en <u>U.S. v. Armstrong</u>, ante, require, a su vez, que se presente "prueba creíble" o específica sobre el tratamiento disimilar entre personas similarmente situadas. En <u>segundo</u> término, se encuentra la etapa de vista evidenciaria, en la cual la parte deberá

alegar hechos suficientes que levanten duda razonable sobre el propósito del ministerio público al encausar o que lleven a que la defensa rebase la etapa de frivolidad. Por último, le corresponde al imputado probar la defensa de procesamiento selectivo en los méritos, para lo cual será necesario establecer un caso *prima facie* de procesamiento selectivo.

II

En Puerto Rico, el desarrollo jurisprudencial de la defensa de procesamiento selectivo ha sido sumamente limitado y la mayor parte de los pronunciamientos que tenemos a nuestra disposición sobre dicha defensa son aquellos expuestos por distintos miembros de este Tribunal en sus respectivas opiniones disidentes u opiniones de conformidad o concurrencia.

En términos generales, hemos expresado que "la fiscalización o procesamiento criminal selectivo es materia de una defensa afirmativa a alegarse y probarse por el imputado en el foro de instancia". Pueblo v. Rexach Benítez, ante, p.280. Ésta requiere, a su vez, que el imputado establezca un efecto discriminatorio en la aplicación de la ley a su caso y que el proceso en su contra fue motivado por esas razones. Pueblo v. Rexach Benítez, ante.

La aplicación de la referida defensa a Puerto Rico no puede ponerse en duda, pues, además del derecho a la igual

protección de las leyes consagrado en la Enmienda 14 de la Constitución de los Estados Unidos y en el Artículo II, Sección 7, de la Constitución del Estado Libre Asociado de Puerto Rico[6], existen en nuestra Constitución preceptos que claramente prohíben que el Estado discrimine entre personas que están en circunstancias similares. A saber, el Artículo II, Sección 1, de nuestra Constitución, el cual establece que "todos los hombres son iguales ante la Ley" y que "[n]o podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas".

¿Qué estandar de prueba debemos requerir en nuestra jurisdicción para que un imputado prevalezca en su solicitud de descubrimiento de prueba y vista evidenciaria sobre la defensa de procesamiento selectivo?

Sabido es que en materia de derechos constitucionales, la Constitución del Estado Libre Asociado de Puerto Rico es de "factura más ancha" que la Constitución Federal y que el derecho constitucional federal constituye solamente el ámbito mínimo que venimos obligados a reconocer. Es por ello que, al interpretar los contornos de nuestra Constitución, podemos utilizar una visión más abarcadora y protectora de manera que brindemos una protección aun mayor

---

[6] El Artículo II, Sección 7, de nuestra Constitución dispone, en lo pertinente, que: "… Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes".

que la reconocida en el ámbito federal. Véase: López Vives

v. Policía de Puerto Rico, 118 D.P.R. 219 (1987).

Con ese norte en mente, consideramos apropiado que en

nuestra jurisdicción, al igual que han establecido las

decisiones de varios tribunales federales de circuito    –

–como el Primer Circuito de Boston–– resulta procedente

"dividir" dicha defensa en dos etapas, esto es, la etapa de

descubrimiento de prueba, previa a la celebración del

juicio, y la etapa del juicio en su fondo.

En la primera de ellas, se requerirá del imputado de

delito que, al plantear la defensa, presente "alguna

evidencia" que sea suficiente para demostrar que su reclamo

no es "frívolo". Establecido esto, y conscientes de que en

la mayor parte de los casos de evidencia pertinente para

sostener un reclamo de procesamiento selectivo en los

méritos está en poder del estado[7], se le permitirá al

imputado llevar a cabo un descubrimiento de prueba en busca

de dicha evidencia.

En la segunda etapa, esto es, en la del juicio en su

fondo, se le exigirá al imputado la presentación de "prueba

creíble", o específica, sobre el tratamiento disimilar

entre personas similarmente situadas, según enunciado en

U.S. v. Armstrong, ante.

---

[7] "In many cases, without access to law enforcement information through Discovery, the defendant can neither confirm nor refute the belief that there is an unprosecuted control group." A. B. Pouling, ante.

No podemos perder de vista que el estándar de prueba enunciado por el Tribunal Supremo Federal tiene el efecto de fusionar los requisitos para el descubrimiento de prueba con los requisitos para probar la defensa en sus méritos.[8] Por ello, si adoptamos en nuestra jurisdicción el estándar más riguroso establecido en U.S. v. Armstrong, ante, estaríamos convirtiendo en letra muerta la defensa de procesamiento selectivo y, para todos los efectos prácticos, estaríamos abdicando *sub silentio* a nuestra función revisora de las actuaciones de la Rama Ejecutiva y, sobre todo, nuestra función de velar porque los ciudadanos de nuestro País gocen de la protección de los derechos constitucionales involucrados.

Reconocemos que la rigurosidad del estándar de prueba necesario para que prospere la defensa de procesamiento selectivo en los méritos tiene su razón de ser, pero, no vemos razón de envergadura para imprimirle dicha rigurosidad a la etapa de descubrimiento de prueba; más cuando existen métodos para proteger la información confidencial en manos del ejecutivo como, por ejemplo, la inspección en cámara por parte del juez que presida la vista evidenciaria.

_____

[8] M.L. Jampol, ante. "Fearing an encroachment on the Executive Branch´s Power, the Supreme Court in Armstrong adopted a very high threshold for obtaining discovery in selective prosecution defenses. The effect of this high threshold is to practically merge the requirements for obtaining discovery in a selective prosecution claim with the threshold for proving such a claim on the merits."

Imprimirle tanta rigurosidad a la etapa de descubrimiento de prueba implicaría, a su vez, depender a ciegas de la presunción de buena fe que recae sobre las actuaciones del ejecutivo. Ello, ciertamente, sería brindarle muy poca protección a los ciudadanos respecto a los derechos constitucionales aquí involucrados.[9] Después de todo:

> [s]elective prosecution should not fall outside the system of checks and balances simply because prosecutors are constitutionally presumed to act in good faith. Otherwise, the system of checks and balances fails to restrain the executive branch from overreaching its authority. Courts should exercise their authority to ensure that equal protection extends to every citizen by carefully and intelligently weighing all the circumstances surrounding a particular case. Discovery places courts in the best position to formulate this balance by permitting facts that underlie the decision to charge to surface.[10]

En fin, el estándar que hoy adoptamos, para las solicitudes de descubrimiento de prueba, no sólo evita que se sujete al imputado a un estado de indefensión requiriéndole, de antemano, que presente evidencia que sólo puede obtener mediante el descubrimiento de prueba, sino que también facilita el ejercicio del deber de la Rama Judicial de detectar y actuar sobre actuaciones

---

[9] A.B. Poulin, ante. "Relying exclusively on the diligence and good faith of the executive branch would leave too little protection for this recognized constitutional right."

[10] Marcy A. Love, United States v. Armstrong: The Supreme Court formulates a discovery standard for selective prosecution claims, 7 Temple Political and Civil Rights Law Review 191, Fall, 1997.

discriminatorias del ejecutivo. A fin de cuentas, el encausamiento selectivo y discriminatorio no sólo le causa daño a los individuos involucrados sino también al sistema judicial de nuestro País.

III

En el caso hoy ante nuestra consideración, el Tribunal de Apelaciones resolvió que Martínez Acosta no tenía derecho a un descubrimiento de prueba ni a una vista evidenciaria sobre su defensa de procesamiento selectivo, debido a que, mediante la prueba presentada, éste no estableció un caso *prima facie* de procesamiento selectivo. No le asiste la razón.

Como recordaremos, en contra de Martínez Acosta se instó una acción criminal por infracción al Artículo 209 del Código Penal por éste pintar propaganda alusiva al PIP en las paredes de un puente sito en la Carretera Número 2 en Sabana Grande. Posteriormente, Martínez Acosta planteó ante el Tribunal de Primera Instancia que el encausamiento en su contra fue selectivo y discriminatorio, por lo cual, solicitó que se autorizara un descubrimiento de prueba sobre la defensa y que se pautara una vista separada para dirimirla. En apoyo a su solicitud, presentó como evidencia varias fotografías de los puentes sitos en la Carretera Número 2 en Sabana Grande, de las cuales surge que dichos puentes se encuentran pasquinados o pintados con propaganda tanto del PPD y del PNP, como comercial. Presentó, además,

el testimonio prestado por el agente Ramos en la vista de determinación de causa probable para arresto, del cual surge que no se han citado a otros manifestantes -- políticos o comerciales-- que han pintado o pasquinado en los puentes de la Carretera Número 2 en Sabana Grande.

De los hechos y de la evidencia antes esbozada surge que Martínez Acosta es un reconocido militante del PIP en el pueblo de Sabana Grande, tanto que ha sido y es el candidato a la alcaldía de dicho municipio por el PIP y es el Presidente del Comité Municipal de dicho partido político. De igual forma, surge que manifestantes de otras colectividades políticas, incluso entes privados con motivos comerciales, han cometido la misma infracción que Martínez Acosta y que éstos no han sido procesados.

De ello se deduce claramente que el reclamo de Martínez Acosta no es frívolo y que existe la posibilidad de que en el encausamiento de Martínez Acosta hayan mediado motivaciones discriminatorias por razón de afiliación política o, incluso, por rechazo al mensaje político que éste pretendía anunciar.

¿Por qué la acción en contra de Martínez Acosta y no en contra de otros militantes políticos de otros partidos que han utilizado las paredes de los puentes en cuestión para anunciar sus aspiraciones políticas o brindar mensajes alusivos a los ideales de sus partidos? Esto es, precisamente, lo que el tribunal viene obligado a determinar mediante la consideración efectiva del reclamo

de Martínez Acosta, luego de autorizar el descubrimiento de prueba solicitado y dirimir la defensa mediante una vista evidenciaria.

En fin, en la etapa temprana en que se encuentra el caso de Martínez Acosta, la evidencia presentada por éste es suficiente para determinar que su reclamo no es frívolo, pues, demuestra la posibilidad real de que existen personas similarmente situadas no encausadas. Es nuestro deber constitucional permitir que se indague sobre la reclamación de Martínez Acosta, pues, de lo contrario, podríamos estar avalando una actuación inconstitucional  por parte del poder ejecutivo.

En fin, somos del criterio que Martínez Acosta cumplió con el estándar de prueba de "no frivolidad" y que, por tanto, es acreedor tanto al descubrimiento de prueba como a la vista evidenciaria solicitada.

IV

En mérito de lo antes expuestoprocede decretar la revocación de las sentencias recurridas y devolver el caso al Tribunal de Primera Instancia, Sala Superior de San Germán, para la continuación de los procedimientos de conformidad con lo aquí expuesto.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ<br>Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                        CC-2007-616     *CERTIORARI*

Luis E. Martínez Acosta

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 18 de julio de 2008

Por los fundamentos expuestos en la Opinión que antecede, se revocan las sentencias recurridas y se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de San Germán, para la continuación de los procedimientos de conformidad con lo aquí expuesto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió Opinión disidente a la cual se unió el Juez Presidente señor Hernández Denton.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.

                                CC-2007-616

Luis E. Martínez Acosta

    Peticionario

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se le une el Juez Presidente señor Hernández Denton.

San Juan, Puerto Rico, a 18 de julio de 2008

En el caso ante nuestra consideración, una Mayoría de este Tribunal rechaza erróneamente el estándar establecido por el Tribunal Supremo de Estados Unidos en *United States v. Armstrong*, 517 U.S. 456 (1996), sobre cuándo y bajo qué criterio procede acceder a un descubrimiento de prueba, basado en un reclamo de procesamiento selectivo. En *Armstrong,* el Tribunal Supremo resolvió que para tener derecho a descubrimiento de prueba en estos casos, el acusado debe presentar prueba creíble suficiente que tienda a demostrar los elementos de la defensa esgrimida. Estos son: 1) que otras personas similarmente situadas al acusado no han sido

procesadas criminalmente; 2) que la decisión de encausarle fue una intencional y de mala fe; 3) que medió en su selección para procesamiento un ánimo discriminatorio o criterios inconstitucionales. En otras palabras, hay que presentar prueba clara, suficiente y creíble que tienda a demostrar el efecto y el propósito discriminatorio del procesamiento penal.

Por contra, el Tribunal hoy adopta un relajado estándar mediante el cual el acusado **sólo** tendrá que presentar **alguna evidencia** que demuestre que su reclamo **no es frívolo**, para que se acceda a la solicitud de descubrimiento. Sostengo que este "estándar", no es tal, y que en lo sucesivo, bastará con invocar el mágico talismán de procesamiento selectivo, para que haya que acceder al descubrimiento solicitado. El Tribunal desatiende así las delicadas consideraciones que rodean un planteamiento de esta naturaleza.

En nuestra jurisdicción un reclamo es frívolo cuando no tiene fundamento legal alguno que le permita prosperar. *Véase, Black's Law Dictionary*, 7th edition, West Group, Minn., 1999, pág. 677. Con lo cual, adoptar una norma asentada en la ausencia de frivolidad del planteamiento de procesamiento selectivo como hace hoy el Tribunal, es, a mi juicio, adoptar un presupuesto que adolece de rigor jurídico. Véase discusión *infra*. Con este falso axioma como norte decisorio, en lo sucesivo, cualquier cosa será suficiente para darle curso a una solicitud de descubrimiento de prueba ante un reclamo de procesamiento selectivo, pues lo único que

se exige es que "alguna prueba" rebase un criterio de frivolidad.

Desde nuestro venerable alminar, la Mayoría adopta este estándar que atenta contra la indiscutible prerrogativa del Poder Ejecutivo de velar por el cumplimiento de la ley. Área esta que la Constitución reservó para otro Poder gubernamental. El respeto que le debemos a otra Rama de igual jerarquía a la nuestra --sustrato del principio de separación de poderes-- nos exige que adoptemos guías **razonables** para estos casos. Soy del criterio que en este menester, tenemos la obligación de evitar la intromisión indebida del Poder Judicial en la prerrogativa del Ejecutivo de encausar criminalmente. Además, debemos impedir la dilación innecesaria de los procesos penales cuando la controversia es una colateral a la inocencia o culpabilidad del acusado, como ocurre en estos casos. De otra parte, también tenemos una responsabilidad de proteger el derecho a descubrimiento que le asiste al acusado; pero esto último no niega lo primero. La norma que hoy se anuncia no es razonable y no sopesa todos los intereses involucrados. Por ello, disiento.

**I**

**A**

En el pasado, este Tribunal no había tenido ocasión de expresarse sobre la controversia que se plantea en este recurso. No obstante, en *Pueblo de Puerto Rico v. Miró Castañeda*, res. 31 de enero de 2008, 173 D.P.R. ___, 2008 T.S.P.R. 11 (Rodríguez Rodríguez, J., Op. disidente), nos

expresamos sobre la defensa de procesamiento selectivo.[11] Allí señalamos que para que ésta prospere, el acusado tiene que establecer el efecto y el propósito discriminatorio de la actuación estatal, es decir, del procesamiento penal, que son los estándares ordinarios de un análisis de igual protección de las leyes. *Pueblo de Puerto Rico v. Miró Castañeda, supra,* y fuentes allí citadas. Hay que recordar, que la defensa de procesamiento selectivo es un planteamiento de igual protección de las leyes.

En *Miró Castañeda,* abordamos también, aunque someramente, la naturaleza y alcance del descubrimiento de prueba en estos casos teniendo como referente lo resuelto por el Tribunal Supremo de los Estados Unidos en *United States v. Armstrong, supra,* caso normativo en la jurisdicción norteamericana sobre este asunto. Sostengo, que en esta ocasión, debíamos abundar sobre el estándar establecido en *Armstrong,* para determinar cuándo procede darle curso a cierto descubrimiento basado en esta defensa. Por el contrario, la respuesta que hoy nos ofrece una Mayoría del Tribunal no tal sólo es insatisfactoria, sino errónea.

---

[11] Hacemos la salvedad que la defensa de procesamiento selectivo, en puridad, no es una defensa como tal, pues no está basada en los méritos del cargo penal que pesa en contra del acusado. Es, más bien, un planteamiento independiente de que el fiscal ha presentado una acusación basado en criterios que prohíbe la Constitución. Es así, un asunto colateral a la inocencia o culpabilidad del acusado. Véase, *United States v. Armstrong*, 517 U.S. 456, 463 (1996). ("A selective-prosecution claim is not a defense on the merits of the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.")

**B**

Iniciamos recordando que el derecho a descubrimiento de prueba del acusado no es absoluto, pues está atemperado, en general, por lo dispuesto en la Regla 95 de Procesamiento Criminal. Barrera ésta que pretende evitar las "expediciones de pesca en los archivos de fiscalía", así como desalentar se utilice el descubrimiento de prueba como táctica dilatoria. *Pueblo v. Arzuaga*, 160 D.P.R. 520, 530 (2003); *Pueblo v. Rodríguez Sánchez*, 109 D.P.R. 243, 246, 249 (1979).

De otra parte, no se discute que en el ámbito penal corresponde a la Rama Ejecutiva a través de los fiscales del Departamento de Justicia, la delicada encomienda de procesar criminalmente a quienes infringen la ley penal. Véase, *United States v. Nixon*, 418 U.S. 683, 693 (1974)("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.") En *Pueblo v. Dávila Delgado*, 143 D.P.R. 157, 170 (1997), indicamos con acierto lo siguiente:

[E]n nuestra jurisdicción, y conforme a lo dispuesto por nuestro ordenamiento jurídico, la facultad y responsabilidad de investigar los hechos delictivos y la decisión de a qué persona acusar y procesar criminalmente, y por qué delito, recae en persona del Secretario del Departamento de Justicia de Puerto Rico y de los fiscales bajo su supervisión; **poseyendo los mencionados funcionarios amplia discreción en el descargo de estas funciones.** (Énfasis nuestro.)

Véase también, *Boerdenkircher v. Hayes*, 434 U.S. 357, 364 (1978)("So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what

charges to file or bring before a grand jury, generally rests entirely in his discretion.") De ordinario, la determinación en este sentido que tome el Ejecutivo merece nuestra deferencia. *Town of Newton v. Rumery*, 480 U.S. 386, 396 (1987))("courts normally must defer to prosecutorial decisions as to whom to prosecute.") Véase también, *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14-15 (1926).

La amplia discreción que goza el Ministerio Público para encausar no es, naturalmente, absoluta. Está sujeta a limitaciones constitucionales. Una de estas limitaciones la impone el componente de igual protección de las leyes de la cláusula de debido proceso de ley que exige, que la decisión de procesar criminalmente a una persona no esté basada en una clasificación impermisible, como pueden ser la raza, la afiliación política o religiosa de la persona acusada. Véase, *Pueblo v. Dávila Delgado, supra*. Si bien el procesamiento penal es por su propia naturaleza selectivo, estamos contestes en que el criterio de esa selección no puede ser uno basado en consideraciones inconstitucionales. *E.g., United States v. Batchelder*, 442 U.S. 497, 499-500 (1979); *Oyler v. Boles*, 368 U.S. 448 (1962); *Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954).

La alegación de procesamiento selectivo es un planteamiento cuya esencia radica en el principio de igual protección de las leyes. Se alega, que al acusado se le somete al rigor del trámite penal por pertenecer a un grupo particular de personas, o por poseer una característica

singular que goza de protección constitucional, y no porque ha violado la ley. **La segregación para procesamiento del acusado obedece a criterios inconstitucionales, de ahí que se requiera una demostración del ánimo discriminatorio del Estado.** Esta defensa niega entonces, la presunción de legalidad y buena fe que acompaña el desempeño de la labor del Ministerio Público. Apunta, a una actuación inconstitucional, conscientemente tomada por el Estado, de acusar criminalmente a una persona. Precisamente por ser contraria a la presunción de regularidad que acompaña la actuación del Ministerio Público, se requiere que se produzca evidencia clara para que quede establecido que el procesamiento ha sido selectivo. *United States v. Chemical Foundation, Inc., supra*, págs. 14-15 ("in the absence of clear evidence, courts presume that they [the prosecutors] have properly discharged their official duties.")

Por otro lado, el planteamiento de procesamiento selectivo pretende inmiscuir a la Rama Judicial en una evaluación sobre un asunto discrecional de la esencia del Poder Ejecutivo, a saber, la decisión de encausar. Los tribunales no son los foros apropiados para sopesar la infinidad de asuntos que calibra el Ministerio Público a la hora de acusar. Además, esta intromisión tiene un efecto congelante sobre los fiscales, quienes tienen la encomienda de velar por el cumplimiento de la ley, como también tiene el efecto de desviar sus recursos y esfuerzos de lo que debería ser su función principal, probar que el acusado es culpable de los cargos imputados. Como correctamente se indicó en

*Wayte v. United States*, 470 U.S. 598, 607 (1985): "Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor´s motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government´s enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute."

Adviértase también, como ya adelantamos, que esta "defensa" no es tal defensa, pues no está dirigida a dilucidar la inocencia del acusado. Es un asunto colateral a ese hecho. Esto a su vez abona al estándar riguroso exigido para prevalecer en este reclamo, pues de lo contrario, los procesos penales se enfrascan en controversias sobre asuntos que nada tienen que ver con la inocencia o culpabilidad del acusado, dilatando el procesamiento en los tribunales.

Debemos recalcar, que el descubrimiento solicitado en este caso no es el tipo de descubrimiento que autoriza la Regla 95 de Procedimiento Criminal, con lo cual, éste se enmarca fuera del ámbito de nuestro ordenamiento procesal penal. El mismo se autoriza, "en virtud de nuestra facultad inherente para regular los procedimientos judiciales…." *Pueblo v. Miró Castañeda, supra.* Es decir, en rigor, el legislador no autorizó el descubrimiento de prueba en estos casos, lo que a mi juicio nos impone una mayor cautela a la hora de ejercer nuestro poder inherente. Muy en particular, en un caso donde tenemos que irrumpir en facultades connaturales al ejercicio del Poder Ejecutivo.

Es de notar también, que estadísticas crudas sobre la presentación de cargos criminales son impertinentes para demostrar la naturaleza del procesamiento de personas situadas en la misma posición que el acusado, o para evidenciar la intención específica de discrimen en su contra, requerimientos exigidos para probar un reclamo de procesamiento selectivo. *United States v. Bass*, 536 U.S. 862, 864 (2002)("raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants.") Y es que tiene que ser así porque un planteamiento de procesamiento selectivo requiere una intención específica del Estado de discriminar en contra de la persona acusada.

En la etapa de descubrimiento de prueba en estos casos, debemos exigir un similar rigor que el que se que se exige para probar, en los méritos, el planteamiento de procesamiento selectivo. La presunción de regularidad en las actuaciones del Ministerio Público prima igualmente en esta etapa. Lo mismo ocurre con las delicadas consideraciones de separación de poderes que subyacen esta controversia. Además, los rigores que el planteamiento en los méritos de procesamiento selectivo le impone al Ministerio Público, están igualmente presentes en la etapa de descubrimiento de prueba. En fin, que las mismas consideraciones que han requerido rigurosidad a la hora de sopesar este planteamiento en los méritos, tienen igual preminencia en la etapa de descubrimiento de prueba. "The justifications for a rigorous standard for the elements of a selective-prosecution claim

thus require a correspondingly rigorous standard for discovery in aid of such a claim." *United States v.* Armstrong, *supra*, pág. 701.

El Tribunal Supremo de Estados Unidos, consciente de lo anterior, elaboró en *Armstrong* un cuidadoso estándar, en el que dispuso que en estos casos, el acusado tenía que proveer, "'**some evidence tending** to show the existence of the essential elements of' a selective prosecution claim". (Énfasis nuestro.) *United States v. Armstrong, supra,* pág. 470. El Tribunal abundó aun más en su estándar indicando que se necesitaba, para acceder a la petición: "a **credible showing** of different treatment of similarly situated persons". *United Sates v. Armstrong, supra,* pág. 470. (Énfasis nuestro.) Es decir, **el acusado tiene que presentar alguna evidencia clara y creíble que tienda a establecer la existencia de todos los elementos esenciales de la defensa de encausamiento criminal selectivo**. Véase además, W. Lafave, J, Israel, N. King, *Principles of Criminal Procedure: Post-Investigation*, Thomson-West, St. Paul, 2004, sec. 5.4, pág. 193.

Pasemos entonces a evaluar la petición del acusado en este caso, a la luz de la doctrina que hemos esbozado.

## II

En el caso ante nuestra consideración el peticionario ha solicitado del Ministerio Público que produzca todas las denuncias presentadas durante los pasados cuatro años por el mismo delito que se le imputó en la región judicial de Mayagüez. En apoyo a su petición, expuso que era miembro de

un partido político de una ideología que ha sido objeto de persecución por parte del Estado. Además, presentó varias fotografías que demuestran que los puentes de la Carretera Núm. 2 están pasquinados o pintados con propaganda de los dos partidos políticos principales y con propaganda comercial. Además el agente Ramos, quien arrestó al acusado y testificó en la vista de causa probable para el arresto, declaró que no había denunciado a nadie antes por las mismas razones. (Petición de *Certiorari,* Ap., págs. 86-87).

El peticionario sostiene que la única inferencia razonable de la evidencia antes mencionada es que el Estado le ha señalado específicamente para procesamiento penal por su ideología política. No tiene razón. Ya en *Pueblo v. Rexach Benítez*, 130 D.P.R. 279 (1992), indicamos que la prominencia pública del imputado y el hecho de que perteneciera a una minoría tradicionalmente discriminada, o incluso, la mera ausencia de otros supuestos violadores de la ley, de suyo y sin más, es insuficiente para rebasar la presunción de que el Estado había iniciado un proceso de manera legal y de buena fe. Igual resultado se impone en esta ocasión.

No hay en el récord de este caso evidencia clara que tienda a demostrar en modo alguno, que ha mediado un ánimo discriminatorio de parte del Estado en el procesamiento del acusado. Una mera lectura del testimonio del agente Rivera en la vista de causa para arresto así lo hace patente. Tan es así que éste testifica que fue el acusado el que le indicó que era miembro del Partido Independentista Puertorriqueño.

Y a preguntas específicas del abogado de la defensa de si había visto en ocasiones anteriores a personas pasquinando propaganda del Partido Popular Democrático, éste contesta en la negativa. Recordemos que la existencia de ánimo discriminatorio es presupuesto indispensable para probar el planteamiento en los méritos y en la etapa de descubrimiento, el acusado viene obligado a presentar alguna evidencia clara y creíble que tienda a demostrar ese hecho, lo que no ha ocurrido.

De otro lado, la evidencia presentada como fundamento para acceder al descubrimiento de prueba no constituye prueba clara, demostrativa de un procesamiento selectivo en su contra frente a otros individuos similarmente situados a él. Nuevamente, este es uno de los elementos de su reclamo y tiene que aportar evidencia del mismo en esta etapa. No lo ha hecho.

El hecho de que los puentes de Sabana Grande estén pasquinados o pintados con propaganda de los dos partidos políticos principales y con propaganda comercial sólo sirve para establecer ese hecho, sin más. No podemos partir de ese hecho, para de ahí concluir que el Estado estuvo en posición de arrestar y procesar a quienes pasquinaron, más no lo hizo porque era afín o le simpatizaba el mensaje de quienes pasquinaban, más no así en la ocasión en que pasquinaba el acusado. No hay en este récord un ápice de evidencia clara y creíble que tienda a demostrar que el Estado estuvo en posición de citar a las personas que pasquinaban y no lo hizo y que dirigiera sus recursos para encausar al peticionario

movido por un ánimo discriminatorio basado en la ideología del acusado. El peticionario nada ha aportado sobre el requerimiento respecto a personas similarmente situadas a él, como presupuesto de su reclamo.

El hecho de que el mensaje que pretendía transmitir el peticionario constituya expresión política, no implica que el Estado no posea un interés legítimo en regular el lugar y el modo en que el mismo se distribuye, cuando la expresión se expone y afecta la propiedad pública que no ha sido destinada para ese uso. En fin, que el peticionario no ha aportado prueba clara, suficiente y creíble que tienda a demostrar el efecto y el propósito discriminatorio de su procesamiento penal. **El trato preferencial que el Tribunal le concede al peticionario en su reclamo no encuentra apoyo en la norma jurídica aplicable.**

Por los fundamentos antes esbozados rechazaría la petición de descubrimiento de prueba presentada por el peticionario.


                                        Anabelle Rodríguez Rodríguez
                                              Juez Asociada